# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Criminal Action No. 24-cr-00106-NYW-1

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.    RICO TOMAS GARCIA,

     Defendant.

---

## OMNIBUS ORDER ON PRETRIAL MOTIONS

---

On April 9, 2024, an Indictment was filed charging Defendant Rico Tomas Garcia ("Mr. Garcia" or "Defendant") with nine counts of wire fraud, in violation of 18 U.S.C. § 1343, and six counts of money laundering and aiding and abetting the same, in violation of 18 U.S.C. §§ 2 and 1957(a).  [Doc. 1].  Defendant, who proceeds pro se,[1] has filed 14 pretrial motions, including a number seeking this Court's recusal from the case.  The Court addresses each Motion below, starting with the recusal requests to determine whether the Court may hear and resolve Defendant's other substantive pretrial motions.

---

[1] Defendant has terminated three Court-appointed attorneys and one privately retained attorney.  *See* [Doc. 17; Doc. 24; Doc. 38; Doc. 79].  The Court has conducted two hearings pursuant to *Faretta v. California*, 422 U.S. 806 (1975).  *See* [Doc. 56; Doc. 83].  On March 19, 2025, the Court appointed standby counsel from the Criminal Justice Act ("CJA") panel, and standby counsel has entered her appearance in this case.  [Doc. 92; Doc. 98].

Because the Court concludes that recusal is not warranted in this case, the Court then turns to Defendant's other Motions.[2]

## I.    Pro Se Filings

Because Defendant proceeds pro se, the Court affords his filings a liberal construction. *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002). However, Defendant must "follow the same rules of procedure as other litigants," *Couch v. Mitchell*, 687 F. App'x 746, 748 (10th Cir. 2017), and the Court cannot act as his advocate, *United States v. Knight*, No. 93-cr-00358-WYD, 2010 WL 2501199, at *1 (D. Colo. June 15, 2010) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## II.    Motions to Recuse

Defendant has filed an "Affidavit for Mandatory Recusal Under 28 U.S.C. § 144 Due to Judicial Bias, Obstruction, and Systemic Prejudice" (the "Affidavit" or the "First Motion to Recuse"). [Doc. 147]. Defendant seeks the Court's recusal under 28 U.S.C. § 144 based on what he describes as the Court's "extrajudicial tyranny, orchestrated campaign of obstruction against [his] pro se rights, systemic anti-Hispanic prejudice, and criminal complicity in shielding misconduct." [*Id.* at 1]. The subject statute provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

---

[2] Mr. Garcia's filings in this action have been frequent and lengthy. Nevertheless, the Court has attempted to address Mr. Garcia's issues as thoroughly as possible.

28 U.S.C. § 144.

"[T]here is a presumption of impartiality on the part of judges as to matters before them." *United States v. Hall*, 424 F. Supp. 508, 534 (W.D. Okla. 1975), *aff'd*, 536 F.2d 313 (10th Cir. 1976). "Disqualification under 28 U.S.C. § 144 places a substantial burden on the moving party to demonstrate that the judge is not impartial, not a burden on the judge to prove that [s]he is impartial." *Trenton v. Experian*, No. 1:22-cv-00045-WJ-JHR, 2023 WL 3122468, at *2 (D.N.M. Apr. 27, 2023) (citing *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992)). To demonstrate that recusal is appropriate, the movant must demonstrate bias and prejudice that "must arise from an 'extrajudicial source' and result in an opinion 'on some basis other than what the judge learned from [her] participation in the case.'" *Davis v. Cities Serv. Oil Co.*, 420 F.2d 1278, 1282 (10th Cir. 1970) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).

"Although § 144 provides for the assignment of the case to 'another judge' to hear the proceeding once a 'timely and sufficient affidavit' alleging bias or prejudice is proffered, it is still within the discretion of the trial court to determine, at the outset, the legal sufficiency of the affidavit supporting the motion." *United States v. Hudak*, No. 02-cr-01574-MCA, 2003 WL 27384952, at *5 (D.N.M. Oct. 14, 2003) (quotation omitted); *see also United States v. Haldeman*, 559 F.2d 31, 131 (D.C. Cir. 1976) ("It is well settled that the involved judge has the prerogative, if indeed not the duty, of passing on the legal sufficiency of a Section 144 challenge."). Affidavits in support of a request to recuse under § 144 are "strictly construed against the affiant" and "[c]onclusions, rumors, beliefs and opinions are not sufficient to form a basis for disqualification." *Burger*, 964 F.2d at 1070. The party seeking recusal "must state with required particularity the identifying

facts of time, place, persons, occasion, and circumstances" suggesting the judge's partiality. *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). Whether to recuse is within the trial court's discretion, *Burger*, 964 F.2d at 1070, and "[t]here is as much obligation for a judge not to recuse when there is no occasion for [her] to do so as there is for [her] to do so when there is," *Hinman*, 831 F.2d at 939.

Mr. Garcia's Affidavit is procedurally deficient because it does not contain the statutorily required "certificate . . . stating that it is made in good faith." 28 U.S.C. § 144; *see also* [Doc. 147]. Although Mr. Garcia proceeds pro se, he is still required to comply with all applicable laws, including the procedural requirements of § 144. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Because "[a]n affidavit must comply with § 144 before it can effectively disqualify a judge," *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976), Defendant's Affidavit is insufficient to demonstrate recusal is appropriate.[3]

The First Motion to Recuse also fails to articulate facts suggesting extrajudicial bias or prejudice and is insufficient to meet Defendant's significant burden to show partiality. While Defendant asserts that the Court is biased against him, the vast majority of his complaints stem from the Court's rulings. *See* [Doc. 147 at 2–14]. But it is well-

---

[3] On June 13, 2025, Defendant filed another document titled "Affidavit Seeking Recusal Under 28 U.S.C. §§ 144, 455, Transfer Under Fed. R. Crim. P. 21(a), and Dismissal for BRA violations." [Doc. 160]. To the extent that document contains a "Certificate of Good Faith," *see* [*id.* at 46], for a number of reasons, that filing is insufficient to cure the deficiency in Defendant's original Affidavit. For one, the statute expressly states that a party may only file one affidavit for recusal in any case. *See* 28 U.S.C. § 144. The June 13 filing, to the extent it contains a second affidavit, is procedurally improper. *N.M. Horsemen's Ass'n v. Sunray Gaming of N.M., LLC*, No. 1:24-cv-00235-MLG-DLM, 2024 WL 2804121, at *2 (D.N.M. May 31, 2024). Second, the June 13 filing only seeks the recusal of Judge Varholak, *see* [Doc. 160 at 1], so the contents of that document cannot support Mr. Garcia's request to recuse the undersigned.

settled that adverse rulings do not demonstrate bias and do not provide a basis for recusal. *United States v. Walker*, 838 F. App'x 333, 337 (10th Cir. 2020); *Springer v. Seventh Jud. Dist. Ct.*, No. 1:23-cv-00499-MIS-JMR, 2023 WL 7130721, at *5, *7 (D.N.M. Oct. 30, 2023).[4]  Further, court rulings are not "extrajudicial" and cannot support recusal under § 144. *Blakely v. USAA Cas. Ins. Co.*, No. 2:06-cv-00506 BSJ, 2012 WL 6115625, at *2 (D. Utah Dec. 10, 2012).[5]  For all of these reasons, the First Motion to Recuse is respectfully **DENIED**.

Defendant also filed a "Judicial Misconduct Complaint and Motion for Recusal of Judge Nina Y. Wang" (the "Second Motion to Recuse").  [Doc. 148].  The Government's

---

[4] Moreover, the Court notes that many of Defendant's complaints misrepresent the record or are simply incorrect.  For example, he asserts that the Court "[t]hreaten[ed] [his] arrest for requesting remote hearings, as an ADA accommodation for [his] cardiac condition." [Doc. 147 at 2].  Although the Court denied Defendant's motion requesting leave to appear remotely at a January 31, 2025 status conference and warned Defendant that if he failed to appear in person, the non-appearance "may be grounds for an issuance of an arrest warrant," [Doc. 55], there was no mention of Defendant's "cardiac condition" in his motion seeking leave to appear remotely, *see* [Doc. 51]; *see also* [Doc. 146 at 20 (Mr. Garcia stating that his cardiac condition was "notified to [sic] the court since April 21, 2025," i.e., three months after the Court's denial of leave to appear remotely)].  He also mentions "Uncontrolled Courtroom Conduct," asserting that the Court "[a]llow[ed] her clerk's unlawful sidelines remarks during Doc. 75, undermining due process." [Doc. 147 at 3 (emphasis omitted)].  The docket entry at [Doc. 75] is a Minute Order permitting one of Defendant's former attorneys to withdraw.  *See* [Doc. 75].  Contrary to Defendant's assertions, none of the undersigned's law clerks have attended or participated in any hearings in this case.  Finally, he argues that the Court is "[v]iolating local rules by delaying rulings," citing to Local Criminal Rule 47.1 for what he claims is a "prompt disposition requirement."  [Doc. 147 at 7].  Local Rule 47.1 governs public access and restriction of case filings and contains no such timing requirement.  *See* D.C.COLO.LCrR 47.1.

[5] To the extent Defendant argues that the Court harbors "systemic anti-Hispanic prejudice" and that the Court has "presum[ed] [his] claims false due to [his] Hispanic identity," [Doc. 147 at 1, 3], these unsupported statements are based only on the Court's adverse rulings against Defendant.  The Court's rulings striking or denying Defendant's various pro se motions were based on the motions' procedural impropriety and/or lack of merit, *see, e.g.*, [Doc. 68; Doc. 102], not any extrajudicial bias.

Response is docketed at [Doc. 159].  The Second Motion to Recuse is addressed to Chief Judge Brimmer, who does not preside over this case.  *See* [Doc. 148 at 1].  The Motion states that "[t]his submission constitutes a motion to recuse Judge Nina Y. Wang under 28 U.S.C. § 144 . . . and § 455(b)(1) . . . and a judicial misconduct complaint under 28 U.S.C. § 351(a)."  [*Id.* at 2].  To the extent the Second Motion to Recuse seeks recusal of the Court under § 144, the Motion is procedurally improper.  *See* 28 U.S.C. § 144 ("A party may file only one . . . affidavit in any case.").

As for Defendant's request for the Court's recusal under § 455, Defendant has still failed to show that recusal is necessary or appropriate.  Section 455 states that a judge shall disqualify herself if she "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).  Again, Defendant's stated bases for recusal are the Court's rulings denying or striking his various pro se filings.  *See* [Doc. 148 at 3–4].  The denial of motions that lack merit or the striking of procedurally improper motions simply does not demonstrate personal bias or prejudice against Defendant.  *Walker*, 838 F. App'x at 337.  The Second Motion to Recuse is respectfully **DENIED**.

Defendant has also filed an "Emergency Motion to Reconsider Minute Order, Recuse Biased Judiciary, Secure Immediate Medical Relief, and Dismiss Indictment" (the "Third Motion to Recuse").  [Doc. 142].[6]  The Government's Response is docketed at [Doc. 156].  Although Defendant does not develop a meaningful recusal argument in the Motion, it is clear that Defendant seeks the Court's recusal due to Defendant's

---

[6] Although the Third Motion to Recuse was filed first, the Court addresses it third for purposes of clarity.  In addition, the Court already denied the Third Motion to Recuse to the extent it seeks reconsideration of the Court's June 3, 2025 Minute Order.  [Doc. 143].

disagreement with certain Court rulings. [Doc. 142 at 9–19]. For the reasons explained above, this is not a basis for recusal, *Walker*, 838 F. App'x at 337, and the Third Motion to Recuse is respectfully **DENIED**.[7]

Finally, Defendant has filed an "Emergency Omnibus Motion to Halt Judicial Bias, Transfer Venue, and Restore Justice" (the "Motion to Halt Judicial Bias"). [Doc. 146]. The Government's Response is docketed at [Doc 158]. Among other requests, Defendant again seeks recusal of the undersigned in this Motion. *See, e.g.*, [Doc. 146 at 17–18]. Defendant's recusal request contains the same deficiencies as his others and does not demonstrate that recusal is warranted. Defendant's disagreements with the Court's rulings do not trigger recusal, *Walker*, 838 F. App'x at 337, and his assertion that the Court has denied "82.4% of his pro se motions," [Doc. 146 at 8],[8] reflects the merits

---

[7] The Third Motion to Recuse contains requests for relief other than recusal, but none of the requested relief is warranted. For example, Defendant asks that the case be transferred to the Central District of California, [Doc. 142 at 24], but this request is duplicative of a request made in another pending motion addressed below. Defendant also asks that his criminal record and arrest record be expunged, [*id.*], but the Court has no authority to take this action in a pending criminal case. He asks the Court to refer various FBI agents, current and former United States Attorneys, United States Probation Office employees, and "private actors" to various government agencies "for investigation into violations of 18 U.S.C. § 242." [*Id.* at 25]. The Court finds no merit in this request. Finally, Defendant asks that the Court "[a]uthorize a *Bivens* action against" some of the individuals he believes have violated his constitutional rights, [*id.*], but there is no mechanism for a court to "authorize" a civil rights action in a criminal case. Rather, a pretrial detainee seeking to challenge the conditions of his confinement generally must do so through a separate civil action. *See, e.g.*, *United States v. Folse*, No. 15-cr-02485-JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016).

[8] Defendant asserts that there is a "30–40% national average for pro se denials," citing "*Federal Judicial Center, Pro Se Litigation Study, 2019*." [Doc. 146 at 22]. This study is not linked and a copy of it is not provided, and the Court has no duty to search for it independently. *Hall*, 935 F.2d at 1110.

of his filings rather than any bias or prejudice from the Court.[9]  The Motion to Halt Judicial Bias is respectfully **DENIED**.[10]

## III.   Motion to Transfer

Next, Mr. Garcia asks the Court to transfer this case to the Central District of California.  [Doc. 137 ("Defendant's Emergency Motion for Transfer of Venue Pursuant to Fed. R. Crim. P. 21(a) and 21(b)" (the "Motion to Transfer"))].   The Government's Response is docketed at [Doc. 152].

The Federal Rules of Criminal Procedure provide that "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."  Fed. R. Crim. P. 21(a).  "To satisfy this standard, a defendant must establish that the alleged community bias is 'so pervasive and prejudicial as to have created a reasonable likelihood that a fair trial could not be conducted.'"  *United States v. Prado*, No. 10-cr-00074-JFB,

---

[9] Defendant again argues that a procedural rule requires "prompt motion review" and "mandates a 24-hour ruling," this time citing Rule 47(d) of the Federal Rules of Criminal Procedure.  [Doc. 146 at 16].  Rule 47 governs a party's service of supporting affidavits in conjunction with motions and does not impose any requirement that a court rule on a motion within 24 hours of its filing.  *See* Fed. R. Crim. P. 47(d).

[10] To the extent Defendant requests transfer of the case to California, [Doc. 146 at 24], this request is address elsewhere in this Order.  Insofar as he asks for dismissal of the Indictment due to "[c]ounsel's unauthorized speedy trial waiver," delays in ruling on motions, or evidentiary issues, [*id.* at 25], Defendant has not demonstrated any basis to dismiss the charges against him.  The Court has already explained that a defendant need not consent in exclusion of time under the Speedy Trial Act, *see* [Doc. 43 at 7–8], and Mr. Garcia has not articulated any reason why any perceived delay in ruling on his motions necessitates dismissal of the Indictment, [Doc. 146 at 25].  Moreover, Defendant's *Brady* argument is conclusory, undeveloped, and hard to follow, and does not warrant dismissal of the Indictment.  And to the extent Defendant asks the Court to stay and/or transfer a related civil forfeiture action, [*id.* at 25–26], the Court cannot grant relief in a case over which it does not preside.

2011 WL 3472509, at *13 (E.D.N.Y. Aug. 5, 2011) (quoting *United States v. Sabhnani*, 599 F.3d 215, 233 (2d Cir. 2010)).  Rule 21 also permits discretionary transfer "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b).

Defendant argues that transfer is required due to "Colorado's deeply entrenched anti-Hispanic prejudice," stating that "Colorado's courts disproportionately target Hispanics, imposing 15% longer sentences and 36% pretrial detention versus 31% for Whites, with Hispanic males 26.6% less likely to receive probation" and that "Colorado Prosecutors exclude 28% of Latino jurors."  [Doc. 137 at 16–17].  He also argues that "USPO-ICE collusion to detain Hispanic probationers at treatment shows a biased culture at the Colorado USPO targeting Hispanics mirroring Mr. Garcia's treatment to date."  [*Id.* at 17].  He suggests that California has a "lower 8% sentencing disparity for Hispanics, 12% juror exclusions, and robust civil rights protections ensure equity versus Colorado's 15% disparity and biased jury pool," citing a number of sources, documents, and cases in support, [*id.* at 21], but his sources do not support this assertion.[11]

---

[11] Defendant also references "C.D. Cal's 30% faster case resolution expediting justice," citing to "Judicial Business of the U.S. Courts (2024) (court statistics)."  [Doc. 137 at 21]. However, the most recent report tracking the median time of case resolution in criminal cases across all federal district courts demonstrates that the median length of time from indictment to jury trial is 27.7 months in the Central District of California and 30.9 months in the District of Colorado.  *See U.S. District Courts–Median Time Intervals From Commencement to Termination for Criminal Defendants Disposed of, by District, During the 12-Month Period Ending September 30, 2024*, at 3–4, available at: https://www.uscourts.gov/sites/default/files/2025-01/jb_d6_0930.2024.pdf.  Respectfully, this three-month difference is insufficient to demonstrate any meaningful disparity between the two Districts.

He then insists that the JAMS arbitrator and counsel for IPF Sourcing, LLC ("IPF")[12] acted improperly in a related arbitration[13] and that the arbitrator's "local prominence" in Denver "amplifies prejudice in Colorado's 5.8-million-person community" and "undermines Denver's impartiality."  [*Id.* at 18–19 (emphasis omitted)].  He contends that this Court has "refus[ed] to grant timely hearings blocking [medical] treatment" and has dismissed his concerns, *see* [*id.* at 19], but cites exclusively to orders not entered by this Court.  He also takes issue with the Court's denial or striking of his various pretrial motions and its ruling that Defendant is not entitled to hybrid representation.  [*Id.* at 20–21].

The Court's denial or striking of Defendant's various motions does not necessitate transfer of the case to another district.  *See United States v. McCoy*, No. 2:12-cr-00218-TS, 2013 WL 3200588, at *1 (D. Utah June 24, 2013) (denying motion to transfer based on adverse rulings).[14]  As for the argument that a Colorado jury would harbor an anti-

---

[12] The Indictment alleges that Defendant falsely represented to IPF that he would source bottles of hand sanitizer in exchange for approximately $2.5 million.  *See* [Doc. 1 at ¶ 5].

[13] Insofar as Mr. Garcia is attempting to raise concerns regarding the arbitration itself, this Court takes judicial notice of *SZY Holdings, LLC v. IPF Sourcing, LLC*, Case No. 20-cv-01475-MSN-JFA (E.D. Va), and concludes that such concerns must be raised in that case.  *See Bunn v. Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020) (recognizing that a court may take judicial notice of docket information from another court); Fed. R. Evid. 201(b)(2).  Pertinent to this criminal case, however, the ruling by the United States Court of Appeals for the Fourth Circuit in *SZY Holdings, LLC v. Garcia*, No. 23-1305, 2024 WL 3983944 (4th Cir. Aug. 29, 2024) does not hold that the criminal prosecution of Mr. Garcia is precluded, *see* [Doc. 137 at 10], and Mr. Garcia cites no other authority for that proposition.  Nor is this Court aware of any legal authority for that proposition.

[14] In addition, Defendant continues to pursue arguments repeatedly rejected by the Court as meritless.  For example, he continues to insist that he is entitled to in forma pauperis status in this criminal case, *see* [Doc. 137 at 34], but the Court has repeatedly explained that an in forma pauperis designation is not necessary for a criminal defendant, *see* [Doc. 102 at 2–3].  And to the extent Defendant insists that he needs in forma pauperis status

Hispanic animus, Defendant's statistical representations about Colorado juries are not supported by submitted evidence, but instead vague citations to sources that, based on the Court's review, do not support his assertions.  In addition, the Court acknowledges that studies show that Hispanic defendants receive disparate sentences compared to white defendants.  However, the statistics Defendant cites are nationwide, not state-specific.  Furthermore, Defendant's assertion that California has a "lower 8% sentencing disparity for Hispanics" is not supported by any evidence cited in his Motion.[15]  And finally, insofar as Defendant suggests that the JAMS arbitrator has "local prominence" in the Colorado community, this assertion is unsupported, and moreover, should the JAMS arbitrator be identified as a potential prosecution witness in this case, the Court will conduct robust voir dire to ensure that no juror personally knows any witness set to testify at trial.  In sum, Defendant has not demonstrated that transfer of venue is required under Rule 21(a).

The Court reaches the same conclusion with respect to discretionary transfer under Rule 21(b).  The Supreme Court has identified ten factors relevant to a court's

---

to pursue an appeal, [Doc. 137 at 34], the Court again reminds Defendant that any request is premature, as there is no final appealable order in this case.

[15] Defendant cites to "U.S. Sentencing Commission, Demographic Differences (2023)" to support his assertion that "Colorado's courts disproportionately target Hispanics, imposing 15% longer sentences and 36% pretrial detention versus 31% for Whites, with Hispanic males 26.6% less likely to receive probation."  [Doc. 137 at 16–17].  From the best the Court can ascertain, Defendant relies on the United States Sentencing Commission's 2023 Demographic Differences in Federal Sentencing Report, available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2023/20231114_Demographic-Differences.pdf.  This report does not appear to contain any Colorado-specific or California-specific statistics.  Moreover, the Court cannot act as Defendant's advocate, *Hall*, 935 F.2d at 1110, and is "not obligated to comb the record in order to make [Defendant's] arguments for him," *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000).

discretionary transfer decision:  (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) any disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) the relative accessibility of place of trial; (9) the docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.  *Platt v. Minn. Min. & Mfg. Co.*, 376 U.S. 240, 243–44 (1964).  Defendant bears the burden of demonstrating that transfer is appropriate under Rule 21(b).  *United States v. Harshbarger*, No. 12-cr-40119-JAR, 2013 WL 172865, at *1 (D. Kan. Jan. 16, 2013).

Defendant does not expressly address the *Platt* factors.  Instead, he argues that transfer to California would be more convenient for him because he lives in California, he was receiving medical care in California, and his stay in Colorado costs "his elderly host" "$1,000/month to sustain him in Colorado."  [Doc. 137 at 14, 16, 21].  The Government opposes transfer, arguing that the *Platt* factors weigh in favor of keeping the case in Colorado.  [Doc. 152 at 9–14].

Turning first to the location of Defendant, while he previously resided in California, a condition of Defendant's bond was to remain in home detention in Colorado, and he is now detained in Colorado.  Because Defendant has been detained for bond violations, his prior residence in California carries little weight, as he would remain detained if the case were transferred to California.  As for witnesses, the Government represents that it "is not aware of any material witnesses who reside in California" and that it intends "to call at least some witnesses who are based in Colorado, including the assigned FBI case agent and a forensic accountant."  [Doc. 152 at 9].  In addition, the offense conduct is

alleged to have occurred in Colorado, and the Government alleges that Defendant "laundered some of the proceeds" of the alleged crime "to purchase a property in Sedalia, Colorado." [*Id.* at 10–11]. These factors favor keeping the case in this District.

The Government asserts that "the location of documents and records should probably be considered as a neutral factor" given their digital nature, [*id.* at 11], and the Court agrees, *see United States v. Young*, No. 2:12-cr-00502, 2012 WL 5397185, at *4 (D. Utah Nov. 5, 2012) ("In the current electronic age in which most documents can be easily scanned and sent digitally to just about any location, and in which transportation of tangible objects is rapid and reliable, this factor seems of minimal importance in the court's determination whether to transfer venue."). Defendant does not identify any business disruptions that would result from keeping this case in Colorado. *See* [Doc. 137]. As for expenses, Defendant does not identify any expense he incurs due to the Colorado venue, though he asserts that his "host" has incurred $1,000 per month in expenses. [*Id.* at 14]. It is unclear, however, whether this remains true in light of Defendant's detention. These factors are neutral.

Counsel for the Government and Mr. Garcia are currently located in Colorado, so this factor does not obviously weigh in favor of transfer. As for accessibility of the place of trial, Denver and Los Angeles are equally accessible, so this factor is neutral. *See United States v. Valdes*, No. 05-cr-00156-KMK, 2006 WL 738403, at *8 (S.D.N.Y. Mar. 21, 2006) ("Neither party has demonstrated any problems with accessibility that would warrant favoring one forum over the other. . . . Therefore, the eighth *Platt* factor does not weigh for or against transfer."). And a review of the dockets for each District favors keeping the case in Colorado. While the time from filing of an Indictment to the conclusion

13

of a jury trial is slightly longer in Colorado, criminal cases as a whole tend to resolve faster in this District; the median length of time for case resolution in the District of Colorado is 13.6 months, but 20.2 months in the Central District of California. *See U.S. District Courts–Median Time Intervals From Commencement to Termination for Criminal Defendants Disposed of, by District, During the 12-Month Period Ending September 30, 2024*, at 3–4, available at: https://www.uscourts.gov/sites/default/files/2025-01/jb_d6_0930.2024.pdf. Moreover, this case is set for trial to begin on November 3, 2025, and the case is on track for expedient resolution. [Doc. 87]. Finally, Mr. Garcia asserts that the case should be transferred so he can receive medical care in California and be away from Colorado's high altitude. But now that Defendant has been detained, he would not be entitled or able to receive medical care from a private provider, and the Court is without sufficient information to find that the Colorado's altitude warrants transfer, especially in light of the other factors weighing against transfer.

Upon review of the *Platt* factors, the Court finds that Defendant has not met his burden to show that transfer to the Central District of California is warranted under Rule 21(b). Accordingly, the Motion to Transfer is respectfully **DENIED**.[16]

## IV.    Motion to Disclose Grand Jury Materials

On April 1, 2025, Defendant filed a Motion for Disclosure of Grand Jury Transcripts and Exhibits Due to Prosecutorial Misconduct and Brady Violations (the "Motion to Disclose Grand Jury Materials"). [Doc. 94]. The Government's Response is docketed at

---

[16] As for Defendant's request for the Court's recusal based on its prior rulings, *see* [Doc. 137 at 14], the request is denied for the reasons explained above.

[Doc. 106].  The Court notes that on April 9, 2025, the Court authorized the disclosure of grand jury materials under Rule 6(e).  *See* [Doc. 104].

In his Motion, Defendant asks the Court to enter an order "compelling the United States to provide full disclosure of all grand jury transcripts, exhibits, and underlying materials used in the grand jury proceedings that resulted in the" Indictment.  [Doc. 94 at 1].  He argues that (1) the Government "improperly presented private civil arbitration documents to criminal grand jury that were both inadmissible and incomplete, violating Defendant's due process rights," [*id.* at 2]; (2) "the [G]overnment failed to disclose exculpatory material," in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), [Doc. 94 at 2]; and (3) the Government "directly alter[ed], misrepresent[ed], and/or omit[ed] key evidence and knowingly present[ed] such tainted evidence to the grand jury," [*id.*].  He argues that all of these bases require the requested Court order.  [*Id.* at 3].  The Government responds that, on April 3, 2025, it "ordered transcripts from the grand jury presentation and will provide those transcripts and exhibits to the defendant immediately upon receipt." [Doc. 106 at 1].  It argues that the other requests should be denied because (1) "there is no prohibition on presenting materials from a civil arbitration in a criminal case," [*id.*]; and (2) Defendant's claims of prosecutorial misconduct are without merit, as the Government "has complied with its ethical and discovery obligations under the Federal Rules of Criminal Procedure and the Court's discovery order," [*id.* at 4].

The Court agrees with the Government that Defendant's request for grand jury transcripts has been rendered moot by the Government's representations that it would provide those transcripts to Defendant, and the Court assumes that the Government did provide those transcripts.  *See United States v. Lujan*, 530 F. Supp. 2d 1224, 1256

(D.N.M. 2008) (The Court "should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought." (citing *Banks v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988); and *United States v. McVeigh*, 923 F. Supp. 1310, 1314 (D. Colo. 1996)).  As for Defendant's other assertions that the Government committed *Brady* violations by submitting inadmissible evidence, manipulating evidence, and withholding evidence, [Doc. 94 at 6], his arguments are vague, unspecific, and insufficient to demonstrate any sort of violation of Defendant's rights under *Brady* or otherwise.  "To establish a *Brady* violation, the defendant must prove that the prosecution suppressed evidence, the evidence was favorable to the defense, and the evidence was material." *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009).  Defendant has not addressed these factors and has not met this burden. As for his assertion that the Government withheld exculpatory evidence from the grand jury, "a grand jury investigation is not an adversarial process," *United States v. Jones*, 160 F.3d 641, 646 (10th Cir. 1998), and the Government is not required to present all exculpatory evidence in its possession to a grand jury, *United States v. Williams*, 504 U.S. 36, 51 (1992).  "It is decidedly not the province of the federal courts to police the sufficiency of the evidence in a prosecutor's presentation to the Grand Jury." *United States v. Shyne*, No. 4:05-cr-01067-KMK, 2007 WL 1075035, at *9 (S.D.N.Y. Apr. 5, 2007). If Defendant believes that additional context changes the view of certain evidence, he may make that argument and present that contextual evidence at trial.  Finally, to the extent Defendant suggests that the Government manipulated the evidence presented to

the grand jury and requests an evidentiary hearing to investigate this, [Doc. 94 at 12], this position is based on pure speculation and the requested relief is unwarranted.

Because Defendant has not demonstrated that any additional Court order is necessary, the Motion to Disclose Grand Jury Materials is respectfully **DENIED**.[17]

## V.     Motion to Compel Transcripts

The Court next turns to Defendant's Emergency Motion to Exonerate Surety Bond, Compel Production of Transcripts, Impose Sanctions, and Order Investigations (the "Motion to Compel Transcripts").  [Doc. 125].  The Government's Response is docketed at [Doc. 151].[18]

Defendant argues that he "requires transcripts of all court hearings to document judicial abuse of discretion and overt bias."  [Doc. 125 at 8].  As the Court has already explained to Defendant, the Honorable Scott T. Varholak's designation of Defendant as eligible for Court-appointed counsel "renders Mr. Garcia eligible for funding under the Criminal Justice Act, including funding to order transcripts of Court proceedings."  [Doc. 111 at 2 (emphasis omitted)].  The Court explained to Defendant that he may request transcripts through the CJA Resource Counsel.  [*Id.*].  Although Defendant insists that he

---

[17] Defendant also argues that the Government violated the Jencks Act by "fail[ing] to disclose material witness statements and documents."  [Doc. 94 at 11].  But the Jencks Act provides that "<u>[a]fter a witness called by the United States has testified on direct examination</u>, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b) (emphasis added).  The Government may not be compelled to disclose Jencks Act material prior to trial.  *United States v. White*, 750 F.2d 726, 729 (8th Cir. 1984).  This argument is thus without merit.

[18] The Court referred the portion of this Motion requesting exoneration of a surety bond to Judge Varholak, *see* [Doc. 126], and that portion of the Motion was denied on May 13, 2025, [Doc. 132].  The Court thus does not address this request in this Order.

"does not have to seek grants from the CJA as Judge Wang has erroneously claimed in her last order," [Doc. 125 at 9 (emphasis omitted)], Mr. Garcia is mistaken.  If any party in a case before the Court, criminal or civil, seeks an official transcript of a proceeding, the requesting party must formally order a transcript *from the court reporter*.  Because Defendant proceeds pro se, the Court alerted Defendant how he could order transcripts through the CJA Resource Counsel.  Defendant's pro se status does not alter the standard practice for requesting hearing transcripts, and to the extent Defendant seeks a hearing transcript, he must go through the appropriate formal avenues to obtain those transcripts.[19]

Defendant also requests "sanctions under the Court's inherent authority" and "referral to the Department of Justice Office of Professional Responsibility" based on what he alleges were false statements made in court by a former United States Attorney and a United States probation officer.  [Doc. 125 at 9].  Defendant argues that the probation officer's "unlawful actions" violated his custodian's "privacy rights" and "constitute federal crimes."  [*Id.* at 8].  However, Defendant cannot raise arguments on behalf of a non-party to this case.  Further, he has not demonstrated the existence of any sanctionable conduct or that any sanctions are warranted, and the Court is a neutral adjudicator and does not initiate investigations of perceived crimes.  The Motion to Compel Transcripts is respectfully **DENIED**.

---

[19] As explained below, if Defendant's recent detention hinders his ability to contact the CJA Resource Counsel, then his standby counsel may assist Defendant in obtaining transcripts.

## VI.    Motion for Expedited Discovery

Defendant has also filed an "Emergency Motion for Expedited Discovery, Comprehensive Findings, Judicial Referral, and Dismissal for Systemic Misconduct" (the "Motion for Expedited Discovery").  [Doc. 145].  The Government's Response is docketed at [Doc. 157].

Defendant's Motion for Expedited Discovery largely repeats arguments this Court has already rejected.  For example, he argues that the Court has refused to release hearing transcripts, which he says "creates a structural barrier, thwarting Mr. Garcia's defense and appellate rights."   [Doc. 145 at 21]; *see also* [*id.* at 33].   For reasons explained above, this argument is without merit.   Defendant has always had the opportunity to request transcripts through the CJA Resource Counsel, and his decision to not do so does not warrant any relief from this Court.  He again takes issue with the Court's "82.14% pro se denial rate, far above the national average (~60%, DOJ 2023)," and the Court's "misuse of procedural rules to deny motions."  [*Id.* at 32].  Once again, adverse rulings do not demonstrate bias against a party, nor do they warrant recusal. *Walker*, 838 F. App'x at 337.[20]

Defendant also requests "[d]irect digital delivery within 7 days" of the Probation Office's pretrial services report; "PTRA scores"; "Fax from Weber/Ansart to Olguin"; "Communications between Weber, Junker, Ansart, Olguin, Hurd, and USAO-Tan, including criminal-forfeiture and Virginia case coordination"; "Communications between USAO, civil forfeiture court, and Virginia federal court"; "Grand jury subpoenas for JAMS

---

[20] To the extent Defendant requests an order directing this Court to "reinstate ignored motions (Docs. 39, 59, 63, 125, 129) or face a 10th Circuit mandamus petition," [Doc. 145 at 37], the Court declines to reconsider any of its orders in this case.

evidence and communications with Haglund and Bonello, with a ruling suppressing all JAMS evidence and derived warrants"; "USPO records of Olguin's contact"; "BI Incorporated delay data"; "USAO/USPO memoranda on bond status"; and "Full grand jury disclosure, correcting the 3,000-page paper inundation." [Doc. 145 at 33–34]. This vague and broad request for documents is unsupported by legal authority and does not warrant the requested relief. The Court has already ordered the Government to comply with its obligations under *Brady* and presumes it has done so. *Lujan*, 530 F. Supp. 2d at 1256.

Defendant also requests that the Court "[a]ppoint a monitor to review bias in this process," citing to 28 U.S.C. § 1651 and *Hinckley v. United States*, 140 F.3d 277, 286 (D.C. Cir. 1998). *See* [Doc. 145 at 37]. This request is denied for lack of supporting argument and authority. Section 1651 governs the Court's authority to issue "all writs necessary or appropriate in aid of" its jurisdiction, 28 U.S.C. § 1651, but Defendant does not explain how this statute establishes a right to a "monitor" in this case. *Hinckley* concerns an insanity acquitee's request for conditional release and does not support Defendant's request. *See generally Hinckley*, 140 F.3d at 278–86.

Next, Defendant requests that the Court "[d]irect FOIA disclosure of [this Court's] pro se denial records." [Doc. 145 at 37]. The Freedom of Information Act ("FOIA") does not apply to the federal judiciary. *See Hairston v. Supreme Ct. of United States*, No. 1:24-cv-03637-UNA, 2025 WL 622191, at *1 (D.D.C. Feb. 25, 2025) ("[T]he federal judiciary . . . is not an agency; therefore, it is not subject to the FOIA."). Nor is the Court aware of any authority permitting a criminal defendant to make civil FOIA requests within his criminal case. As for Defendant's request that the Court "[c]onsolidate discovery for this case and the forfeiture case . . . to address due process violations from overlapping

evidence and lesser civil protections," [Doc. 145 at 37–38], Defendant cites no authority permitting the consolidation of a criminal and civil case.

Finally, to the extent Mr. Garcia asks that this case be referred to the Chief Judge "for dismissal adjudication by an out-of-district judge," [Doc. 145 at 35], it is well established that a party may not hand-select the judicial officer presiding over his case. Indeed, "[o]n matters assigned to one of the judges, the other judge has no judicial power or control." *Riojas v. Turner*, 304 F. Supp. 559, 561 (D. Utah 1969).  In addition, there is simply no legal basis to assign this case to an "out-of-district judge."

Because Defendant has not demonstrated that he is entitled to any of the requested relief, the Motion for Expedited Discovery is respectfully **DENIED**.

## VII.    Motion to Enforce Supervisory Review

The Court next addresses Defendant's "Motion for Urgent Relief to Enforce Supervisory Review, Sanction Clerk Obstruction, and Secure Venue or Dismissal Findings" (the "Motion to Enforce Supervisory Review").  [Doc. 155].  The Government's Response is docketed at [Doc. 161].

In this Motion, Defendant alleges that the Clerk's Office has obstructed his filings in this case and the delivery of documents to Chief Judge Brimmer.  [Doc. 155 at 3].  He requests various forms of relief, which are addressed below.

First, Defendant seeks reassignment of the case to Chief Judge Brimmer.  [*Id.* at 5].  This request is without merit for reasons explained above and is thus denied. Similarly, his request for the Court to compel the Clerk's Office to deliver a copy of his Second Motion for Recusal to Chief Judge Brimmer, *see* [*id.* at 6], is denied.

Next, Defendant argues that the Court "falsely believes Garcia's right to invoke emergency rules is at [the Court's] discretion, as demonstrated by [the Court's] refusal to act," insisting that he "has the right to invoke emergency rules," citing to Local Rule 47.1(a). [Doc. 155 at 5]. As explained above, Local Rule 47.1 governs restriction of documents and does not contain any "emergency rules." D.C.COLO.LCrR 47.1(a). The Court's refusal to recognize procedural rules that do not exist does not require the Court's "recusal and dismissal," as Defendant suggests. [Doc. 155 at 5].

Defendant also requests "a protective order prohibiting Judge Wang, [Judge] Varholak, and the Clerk's Office from further retaining, ignoring, obstructing, or delaying this motion or notification to Chief Judge Brimmer." [*Id.*]. He asks the Court to issue an order "sanctioning" Clerk's Office employees for "sign[ing] for letter," "refus[ing] to answer pro se questions or forward letter," and "fail[ing] to respond." [*Id.* at 6]. These requests are without merit, as there is no basis to compel the Clerk's Office to deliver case filings to a non-presiding judge.

Mr. Garcia asks for an "order requesting full discovery of Clerk's Office communications related to Docs. 91, 107, 118, and 148," citing Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure in support. [Doc. 155 at 7]. This rule requires the Government to permit Defendant to inspect documents "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). Internal Clerk's Office communications are not within the prosecution's possession, custody, or control. Similarly, Mr. Garcia's request for an "order directing an audit of all Clerk filings under D.C.COLO.LCrR 83.6 (establishing court administration oversight) and D.C.COLO.LCrR 55.2 (requiring accurate docket maintenance)," [Doc. 155 at 7], is without merit. There is

no Local Criminal Rule 83.6.  Local Criminal Rule 55.2 provides that physical evidence in the custody of the Clerk's Office may only be inspected or copied in the presence of the clerk, *see* D.C.COLO.LCrR 55.2, and does not support Defendant's request.

Defendant also requests a "standing order requiring Clerk transparency for pro se filings" and an order "appointing a special master to oversee Clerk compliance with filing orders."  [Doc. 155 at 7].  None of this requested relief is warranted, as the Court is confident that the Clerk's Office has diligently handled docket management in this case.

To the extent Defendant requests "[a]n order for expedited relief for third parties . . . affected by Doc. 125," [Doc. 155 at 7], the Court notes that Judge Varholak has already denied this request, explaining that "the bond was issued out of the Central District of California . . ., and Defendant has not provided any authority for this Court to take action on a bond issued out of the Central District of California," [Doc. 132].  Defendant has not provided any additional authority in his more recent filing.[21]

To the extent Defendant requests a hearing on the Motion, [Doc. 155 at 7–8], the Court finds that a hearing would not materially assist in resolving the Motion.  Defendant's request for certification to the Tenth Circuit under 28 U.S.C. § 1292(b), *see* [*id.* at 13–14], is denied, as section 1292(b) does not apply in criminal cases, *see* 28 U.S.C. § 1292(b) (permitting interlocutory appeal "in a civil action" over "an order not otherwise appealable under this section"); *United States v. Pace*, 201 F.3d 1116, 1119 (9th Cir. 2000) ("Because

---

[21] Defendant provides a citation to *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993), with the cursory parenthetical "protecting third-party rights."  [Doc. 155 at 7].  *James Daniel* addressed the requirement of notice and an opportunity to be heard prior to civil forfeiture after the property owner filed a claim to the seized property. 510 U.S. at 46, 48, 53–54.  It does not address "third-party rights" or consider whether a criminal defendant may assert a third party's civil rights within his criminal case.

of the statutory qualification, section 1292(b) certifications cannot confer interlocutory appellate jurisdiction in criminal prosecutions.").  Finally, to the extent Defendant asks for a ruling on his Motion to Transfer or Motion to Dismiss, [Doc. 155 at 6], the Court has issued such a ruling in this Order.  As such, this request is moot.[22]

For all of these reasons, the Motion to Enforce Supervisory Review is respectfully **DENIED**.

## VIII.  Second Affidavit for Recusal

The Court next turns to the "Affidavit Seeking Recusal Under 28 U.S.C. § 144, 455, Transfer Under Fed. R. Crim. P. 21(a), and Dismissal for BRA Violations" (the "Second Affidavit for Recusal"), which the Court construes as a Motion given the various requests for relief therein.  [Doc. 160].  To the extent this filing seeks Judge Varholak's recusal under 28 U.S.C. § 144, it is denied as duplicative and procedurally improper.  *See* 28 U.S.C. § 144; *N.M. Horsemen's Ass'n v. Sunray Gaming of N.M.*, No. 1:24-cv-00235-MLG-DLM, 2024 WL 2804121, at *2 (D.N.M. May 31, 2024).[23]

Defendant's requests for appointment of a special master, [Doc. 160 at 20, 42]; a protective order, [*id.* at 41]; transfer of venue, [*id.* at 3–4, 42]; and investigatory referrals, [*id.* at 42], have all been addressed in the Court's rulings on other motions and are denied

---

[22] As for Defendant's request for an "order inviting amicus briefs from LatinoJustice PRLDEF or ACLU on Hispanic and pro se rights to due process and systemic racism in the Federal District of Colorado," [Doc. 155 at 7], the Court declines to issue any such order.  If any non-party wishes to file an amicus brief in this case, the non-party may file a motion for leave to do so.

[23] The Court also notes that it is unclear whether § 144 even applies to magistrate judges.  *See, e.g.*, *Peterson v. Miranda*, No. 2:11-cv-01919-LRH, 2013 WL 1500984, at *5 (D. Nev. Apr. 11, 2013) ("It remains an unsettled question whether Section 144 applies solely to district judges and not to magistrate judges."); *but see Gibson v. Watkins*, No. 05-cv-01958-BNB, 2006 WL 581164, at *1 (D. Colo. Mar. 7, 2006) ("Disqualification pursuant to 28 U.S.C. § 144 is not appropriate, because that section applies to district judges.").

for the same reasons as previously stated.  His request for a "[s]tay of all proceedings . . .

pending resolution of recusal and motions to dismiss post-venue change," [*id.* at 41], is

denied as moot, as Defendant's pretrial motions are all resolved in this Order.  To the

extent Defendant takes issue with the conditions of his release, such as home detention

or GPS monitoring, and requests removal of these conditions *see, e.g.*, [*id.* at 43], this

request is moot in light of Defendant's detention based on bond violations.[24]

Finally, Defendant requests that this case be dismissed for "egregious [Bail Reform

Act] violations . . . due to coordinated fraud on the court by [this Court], [Judge] Varholak,"

the United States Attorney's Office, the United States Probation Office, and the Clerk's

Office.  [Doc. 160 at 41].  Defendant cites no authority demonstrating that dismissal of a

criminal prosecution may be appropriate based on the imposition of pretrial conditions

that were, in Defendant's view, greater than necessary.  *See generally* [*id.*].  Moreover,

Defendant's argument fails to establish a violation of his rights under the Bail Reform Act.

For example, he asserts that, at a February 6, 2025 hearing, Judge Varholak "abruptly

abandoned the courtroom . . . without engaging the merits of [his] claims" challenging his

pretrial conditions.  [*Id.* at 8].  This misrepresents the record.  On January 20, 2025,

Defendant's then-counsel of record filed an unopposed motion to modify the conditions

of his pretrial release.  [Doc. 34].  Defendant then filed a pro se motion to strike counsel's

motion to modify the bond conditions.  [Doc. 40].  Judge Varholak held a hearing on the

matter on February 6, 2025, and asked Mr. Garcia his position on the motion to modify

---

[24] The Court also notes that Defendant's former counsel filed a motion to reduce his bond conditions, *see* [Doc. 34], and a hearing was set to discuss the requested relief.  However, after Defendant moved to strike that motion, [Doc. 40], Judge Varholak denied the motion to reduce Defendant's bond conditions with Defendant's approval, [Doc. 70].

his bond conditions; Mr. Garcia stated that the motion to modify was "unauthorized," so Judge Varholak denied the motion. [Doc. 70]. While Mr. Garcia also independently raised arguments about what he believed were issues with his initial appearance and his bond conditions, there was no motion before Judge Varholak to address those arguments; in fact, after Judge Varholak denied the motion, he asked the Parties whether they had any further issues to address, and Mr. Garcia responded "no." Defendant later filed another motion to vacate his pretrial release conditions, this time pro se, [Doc. 118], which the Court referred to Judge Varholak, [Doc. 120]. Six days later, Defendant filed a motion to withdraw his motion to vacate his pretrial conditions, [Doc. 129], which was referred to Judge Varholak, [Doc. 130], and granted, [Doc. 132]. Defendant's representations about supposed disregard of his request to modify his pretrial conditions are unsupported. There is no basis for dismissal of the Indictment.

Accordingly, the Second Affidavit for Recusal is respectfully **DENIED** to the extent it seeks relief under 28 U.S.C. § 144 or seeks any other relief already addressed in this order. To the limited extent it seeks Judge Varholak's recusal under 28 U.S.C. § 455, the Motion is **REFERRED** to the Honorable Scott T. Varholak.

## IX.    Motion to Appoint Special Master

On June 13, 2025, Defendant has filed a "Motion for Immediate Appointment of a Special Master and Emergency Stay of Proceedings" (the "Motion to Appoint Special Master"). [Doc. 164]. The Government's Response is docketed at [Doc. 184]. On July 10, 2025, Defendant filed an "Amendment to Doc. 164 Seeking a Stay, and Strikes of USAO Motions, Formal Findings, and I[n]vestigation." [Doc. 193].

To the extent Defendant requests a protective order "to bar" this Court or Judge Varholak from ruling on the Motion to Appoint Special Master, [Doc. 164 at 8], the Motion is denied. The Court has explained in detail the reasons that recusal is unwarranted.

Insofar as Defendant seeks reassignment of this case to Chief Judge Brimmer, change of venue, appointment of a special master, a stay of all proceedings or discovery, and production of internal communications from the Clerk's Office, [*id.* at 1–2], these requests are denied for the reasons explained elsewhere in this Order. Similarly, there is no basis to institute a "Case Management Order," *see* [*id.* at 2], nor does the Court find any reason to hold an evidentiary hearing on any pending motion, *see* [*id.*].

The Court turns to the Amendment. The Amendment's arguments that have previously been addressed by the Court in this Order—that the case must be referred to Chief Judge Brimmer, that this Court should recuse, that the case should be transferred, or that the case should be stayed, *see* [Doc. 193 at 6, 9–10]—are denied for reasons stated elsewhere in this Order.

Defendant also asserts in the Amendment that the prison officials at his facility have denied him materials required to file an appeal in an out-of-District civil action to which he is a party: *SZY Holdings, LLC v. Garcia*, No. 20-cv-01475-MSN-JFA (E.D. Va.). *See* [Doc. 193 at 1–2]. He argues that "[t]his is a violation of [his] rights to appeal and act pro se." [*Id.* at 2]. However, to the extent Defendant believes his rights are being violated by prison officials—by deprivation of writing materials or otherwise—his request for redress must be made through a separate civil lawsuit, not this criminal case. *See supra* note 7. To the extent he argues that the Clerk's Office is obstructing the filing of his Motion for Appointment of Counsel, *see, e.g.*, [Doc. 193 at 2], the Court confirms receipt and

filing of that Motion on July 2, 2025, *see* [Doc. 186; Doc. 187].  And although Defendant argues that the Clerk's Office is not sending him court orders, which "is a clear violation of due process" that the Court is "duty bound to investigate," [Doc. 193 at 2], the docket reflects that the Clerk's Office has mailed the Court's recent court orders to Defendant to his new address at FCI Englewood, *see, e.g.*, [Doc. 188; Doc. 190; Doc. 196].[25]

Defendant also argues that his pretrial conditions have affected his ability to proceed pro se, and he "request[s] the Court order the USAO to operate under the same conditions [as he is]," such as ordering that the USAO "cannot use any computer, no internet, have no access to paper unless they trade their meals for it, no access to any phone calls, no access to any email, no legal forms, and be held under 20 hours of lockdown per day."  [Doc. 193 at 7].  It goes without saying that the Court could not enter or enforce any such order.

Defendant next contends that several of the Government's response briefs "should be striked [sic] as the detention and isolation rendered [his] response impossible."  [Doc. 193 at 8 (citing [Doc. 156; Doc. 157; Doc. 158; Doc. 159; Doc. 161])].  However, the Court expressly ordered that "[r]eplies to any motions filed in this case will not be permitted absent leave of Court, which will be granted only upon a showing of good cause."  [Doc. 93].  In other words, even if Defendant had attempted to file reply briefs to some of his motions, the Court would not have accepted those filings without leave of Court. Moreover, the Court finds that it can adequately rule on all pending Motions without the

---

[25] Defendant argues that he was not sent "any order by Judge Varholak from the hearing on 06/23/25," [Doc. 193 at 2], but Judge Varholak did not issue any written order in conjunction with that hearing.

benefit of a reply brief.  In sum, the Amendment does not change any of the Court's analysis.  The Motion to Appoint Special Master is respectfully **DENIED**.

## X.    Motion to Dismiss

On June 23, 2025, Defendant filed a Motion to Dismiss for Structural Error (the "Motion to Dismiss").  [Doc. 183].  The Government's Response is docketed at [Doc. 185].

In this Motion, Defendant takes issue with Judge Varholak's June 17, 2025 issuance of an arrest warrant based on violations of his supervised release.  *See* [Doc. 183 at 1]; *see also* [Doc. 170; Doc. 171].  He argues that Judge Varholak's setting of a compliance review hearing and issuance of the arrest warrant were retaliatory.  [Doc. 183 at 1].  He also appears to challenge the basis for his detention, arguing that any violation of his pretrial conditions was not willful, [*id.*], and that he is not a flight risk or a danger to the community, [*id.* at 3].  The Court construes this Motion as an objection to Judge Varholak's issuance of an arrest warrant, as the Motion was submitted prior to Judge Varholak's Order of Detention issued on July 7, 2025, *see* [Doc. 192].  Defendant asks the Court to "vacate all pre-trial conditions" and order his release.  [Doc. 183 at 4].[26]

Defendant's assertion that Judge Varholak's decision to set a compliance hearing was retaliatory is without merit.  Mr. Garcia's has filed challenges to various rulings by Judge Varholak for months now, *see, e.g.*, [Doc. 64; Doc. 129; Doc. 133], so there is no merit to the suggestion that Judge Varholak's decision to hold a compliance hearing was

---

[26] Defendant also requests that the Court "[d]ismiss the case for culmulative [sic] structural error, Brady violations, BRA violations, speedy trial violations, Judicial bias, USPO and USAO fraud on the Court, incarceration without due process, willful obstruction of [his] pro se rights, racial targeting by Judge Varholak.  Not an emergency [sic]" and "refer [the case] to Chief Judge for reassignment within 48 hours."  [Doc. 183 at 4].  These requests are unsupported, undeveloped, and denied for the reasons denying the same requests elsewhere in this Order.

based on any of Defendant's filings seeking Judge Varholak's recusal. Instead, the decision to hold a compliance review hearing was based on a request for a hearing from the United States Probation Office.

Second, Defendant has not established any error in Judge Varholak's issuance of an arrest warrant for alleged violations of Defendant's pretrial conditions. He argues that his violation of his pretrial conditions was not willful because he accidentally went to court on the wrong date. [Doc. 183 at 1]. Even so, this does not vitiate the probable cause that Defendant had violated his pretrial conditions by leaving his home without authorization and failing to respond to probation officers' attempts to reach him. *See* [Doc. 169 (explaining the basis for the Probation Office's request for a warrant)]; *see also* 18 U.S.C. § 3148(b) ("A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release."). Defendant also argues that there is no evidence that he is a flight risk or a danger to the community. [Doc. 183 at 3]. The Court disagrees with this assertion, based on the Probation Office's representation made in the Petition for Arrest Warrant, [Doc. 169], and under oath at the preliminary and detention hearings, [Doc. 182; Doc. 191]. Based on Defendant's behavior on supervision, particularly his concerning and increasingly volatile conduct toward his probation officers, the Court agrees that there is no condition or combination of conditions that will ensure that Defendant will not pose a danger to the safety of any other person. Any objection to Judge Varholak's issuance of an arrest warrant is **OVERRULED**.

The Court finds no basis to dismiss the Indictment. The Motion to Dismiss is respectfully **DENIED**.

XI.    **Motion for Appointment of Counsel**

Defendant has proceeded pro se in this action since March 19, 2025, when his retained counsel withdrew from his representation.  *See* [Doc. 83].  Defendant's retained attorney was his fourth counsel of record in this case, entering his appearance after Defendant terminated three Court-appointed attorneys.  *See* [Doc. 17; Doc. 24; Doc. 38].  After the most recent withdrawal, the Court appointed standby counsel.  *See* [Doc. 92]; *see also Guide to Judiciary Policy, V*7, § 220.55.30 ("[Standby] counsel serves exclusively on behalf of the Court to protect the integrity and continuity of the proceedings, and does not represent the defendant.").

On July 2, 2025, Defendant filed a Motion for Appointment of Counsel and to Compel Rulings on All Pro Se Motions (the "Motion for Appointment of Counsel").  [Doc. 186].  In this Motion, Defendant requests that his standby counsel, Jane Fisher-Byrialsen, be appointed as his counsel of record.  [*Id.* at 2].  The Court set a hearing on the Motion for Appointment of Counsel for July 11, 2025.  [Doc. 187].  Defendant subsequently filed a Motion to Amend Motion to Appoint Counsel (the "Motion to Amend"), wherein he states that he is "amending a portion of [the Motion for Appointment of Counsel] to remove the request to appoint Mrs. Fisher as [his] counsel" and that he is "now seeking to have Mrs. Fisher only appointed as advisory counsel."  [Doc. 194 at 1].  At the hearing, Defendant stated that he wanted to maintain his pro se status, but he wanted Ms. Fisher-Byrialsen appointed as "advisory counsel" so he could speak with her to see whether they could work together.

"It is unclear whether the Tenth Circuit distinguishes between advisory and standby counsel."  *United States v. Twitty*, No. 13-cr-00076-WJM, 2013 WL 3851250, at

*1 n.1 (D. Colo. July 25, 2013).  Other courts have distinguished the two as follows: "Advisory counsel is generally used to describe the situation when a *pro se* defendant is given technical assistance by an attorney in the courtroom, but the attorney does not participate in the actual conduct of the trial."  *Locks v. Sumner*, 703 F.2d 403, 407 (9th Cir. 1983).  "'Standby' counsel refers to the situation where a *pro se* defendant is given the assistance of advisory counsel who may take over the defense if for some reason the defendant becomes unable to continue."  *Id*. at n.3.

Based on the representations made at the July 11, 2025 hearing, the Court's review of the docket, and Defendant's insistence in his Motion to Amend that he seeks to "retain [his] pro se rights to seek the rulings that address . . . constitutional protections," [Doc. 194 at 1], the Court declines to change the scope of Ms. Fisher-Byrialsen's representation at this time.  As a preliminary matter, the Court notes that there is no constitutional right to advisory counsel or standby counsel. *Jensen v. Hernandez*, 864 F. Supp. 2d 869, 908 (E.D. Cal. 2012).  There is no indication that Mr. Garcia is inclined to heed Ms. Fisher-Byrialsen's legal analysis or advice insofar as it conflicts with his own beliefs and/or the positions he seeks to argue in this action.  Indeed, Mr. Garcia has made it abundantly clear that he wishes to proceed pro se, and he intends to keep filing motions directly with the Court regardless of the scope of counsel's representation.  Thus, the potential benefit of expanding the scope of Ms. Fisher-Byrialsen's representation does not outweigh the potential disruption that may arise should Mr. Garcia disagree with Ms. Fisher-Byrialsen's research and/or advice and seek to discharge her as standby counsel for trial.  Under these circumstances, the Court does not find it in the interest of judicial economy to appoint Ms. Fisher-Byrialsen as advisory counsel.  **For purposes of clarity,**

this means that Ms. Fisher-Byrialsen remains standby counsel for Defendant, only for purposes of trial to substitute for Mr. Garcia should the Court determine that he may no longer proceed pro se pursuant to Tenth Circuit authority.  Ms. Fisher-Byrialsen should not conduct legal research on Defendant's behalf, give Defendant legal advice, or act in a representative capacity on Defendant's behalf.  However, Ms. Fisher-Byrialsen may continue to perform administrative tasks to assist Mr. Garcia with self-representation, such as obtaining court transcripts for Defendant through the CJA process, if so requested by Defendant.

**In addition, Defendant is ADVISED that the Court will not permit any further delays of the trial due to his pro se status or any change in his representation.**

In his Motion to Amend, Defendant also seeks an order "limiting the USAO to the exact same conditions [he is] forced to operate under." [Doc. 194 at 2].  The Court denies this request for the reasons stated above.  In addition, Defendant seeks an order "directing the FDC to transfer [him] for medical treatment" to address his cardiac condition.  [*Id.*].  But this Court has no authority over the United States Marshals as to where he is detained pending trial.  Instead, where a defendant is housed pending trial is a matter left to the discretion of the United States Marshals Service.  *See, e.g.*, *United States v. Folse*, No. 15-cr-02485-JB, 2016 WL 3996386, at *2 (D.N.M. June 15, 2016) ("The United States Marshalls Service ('USMS') is tasked with the care of federal prisoners from the time of court-ordered custody until either their acquittal or their conviction and delivery to the Federal Bureau of Prisons to serve their sentence." (quotation omitted)); *United States v. Dixon*, No. 1:21-cr-00070, 2021 WL 4129623, at *2 (D.N.D. Sept. 9, 2021) ("Where defendant is housed pending trial is a matter  . . . left to

the discretion of the United States Marshals Service."). To the extent Mr. Garcia challenges his conditions of confinement, he must do so through a separate civil action, as such claims cannot be entertained in this criminal case. *Cf. United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) ("Because Appellants' claims were raised in motions filed in their respective criminal cases and not in civil rights complaints comporting with the requirements of *Bivens*, they were properly denied by the district court.")

Finally, Defendant does not expressly object to Judge Varholak's Order of Detention, but he does ask for "immediate release to fully exercise [his] 1st, 5th, and 6th ammendment [sic] rights." [Doc. 194 at 2]. To the extent this could be construed as an objection under 18 U.S.C. § 3145(b), it is **OVERRULED**. Upon de novo review of the evidence presented at the detention hearings, the Court finds that, based on Defendant's increasingly volatile behavior on detention and his failure to comply with the conditions of his release, there is no condition or combination of conditions that can be imposed to ensure the safety of the community and Defendant's compliance with the conditions of his release. Accordingly, the Motion to Amend is **GRANTED in part** and **DENIED in part**. It is granted to the extent Defendant seeks to amend his Motion for Appointment of Counsel. The Motion for Appointment of Counsel, as amended, is respectfully **DENIED** to the extent it seeks appointment of Ms. Fisher-Byrialsen as "advisory counsel" with duties beyond what is already contemplated and denied to the extent it seeks any additional relief.

## XII.    Defendant's Filings

Before concluding, the Court briefly addresses the volume and substance of Defendant's various motions. Many of the procedural rules cited by Defendant in his

filings either do not exist or do not stand for the proposition for which they are cited.

Similarly, many of the cases cited by Defendant do not stand for the proposition for which

they were cited.  A small portion of the erroneous citations is reflected in the following

non-exhaustive chart below:[27]

| Cited Source | Location in Briefing | Issue |
|---|---|---|
| D.C.COLO.LCivR 65.1(f). | [Doc. 137 at 14; Doc. 142 at 9]. | Does not exist. |
| D.C.COLO.LCrR 65.1. | [Doc. 155 at 5, 14]. | Does not exist. |
| D.C.COLO.LCrR 83.4. | [Doc. 155 at 6]. | Does not exist. |
| D.C.COLO.LCrR 83.6. | [Doc. 155 at 7]. | Does not exist. |
| D.C.COLO.LCivR 65.1, cited for the proposition that the rule "[m]andates 48-hour emergency hearings." | [Doc. 145 at 9, 10]. | Does not stand for proposition cited. |
| D.C.COLO.LCrR 47.1(a), cited for a "prompt disposition requirement." | [Doc. 147 at 7]. | Does not stand for proposition cited. |
| D.C.COLO.LCrR 47.1(d), cited for the proposition that the rule governs "emergency motions" and "authoriz[es] expedited emergency relief in criminal cases." | [Doc. 148 at 4; Doc. 155 at 5, 9]. | Does not stand for proposition cited. |
| Fed. R. Crim. P. 47(d), for the proposition that the rule requires "prompt motion review" and "mandates a 24-hour ruling." | [Doc. 146 at 16]. | Does not stand for proposition cited. |

Notably, even after this Court expressly highlighted Defendant's erroneous citation

to "D.C.COLO.LCivR 65.1(f)" for the supposed (non-existent) requirement that motions

be ruled on within 24 or 48 hours, *see* [Doc. 143], Defendant *continued* to reference this

non-existent requirement by erroneously citing a *different* rule—Local Rule 47.1—which

similarly does not contain any such timing requirement, *see, e.g.*, [Doc. 147; Doc. 148;

---

[27] This chart does not include Defendant's numerous citations to case law that do not stand for the proposition cited.

Doc. 155]. Moreover, Defendant's motions have been innumerable and voluminous, with largely repetitive arguments.

Although Plaintiff proceeds pro se, he must "follow the same rules of procedure that govern other litigants." *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019) (quotation omitted). That includes, at a minimum, taking care to ensure that all of his citations and descriptions of legal authority are accurate.

As for the volume of Defendant's filings, "[f]ederal courts have the inherent power and discretion 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *United States v. Akers*, 561 F. App'x 769, 771 (10th Cir. 2014) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). The Court observes that, in cases where a pro se litigant engages in a "pattern of repetitive, frivolous, or vexatious filings," filing restrictions may be appropriate. *United States v. Petlechkov*, 72 F.4th 699, 710–11 (6th Cir. 2023). "Although Defendant has exercised his right to proceed *pro se*, he is not entitled to burden the Court with frivolous filings." *United States v. Cooks*, No. 23-cr-00094-D, 2024 WL 5147652, at *1–2 (W.D. Okla. Dec. 17, 2024).

The Court does not impose filing restrictions at this time; indeed, before imposing such restrictions, the Court must give "notice and an opportunity to oppose" the filing restrictions before they are implemented. *Akers*, 561 F. App'x at 771. However, the Court does expressly advise Mr. Garcia that **if he continues to file voluminous, repetitive, successive motions raising the same arguments this Court has already rejected, the Court will deny the motion without substantive consideration**. Similarly, to the extent Defendant continues to cite non-existent procedural rules in future filings, **the Court will strike any such filing without substantive consideration**. **<u>The Court will</u>**

**also consider whether filing restrictions should be imposed if Defendant continues**

**to file frivolous and repetitive motions.**

## CONCLUSION

For the reasons set forth in this Order, it is **ORDERED** that:

(1)     Defendant's Motion for Disclosure of Grand Jury Transcripts and Exhibits Due to Prosecutorial Misconduct and Brady Violations [Doc. 94] is **DENIED**;

(2)     Defendant's Emergency Motion to Exonerate Surety Bond, Compel Production of Transcripts, Impose Sanctions, and Order Investigations [Doc. 125] is **DENIED**;

(3)     Defendant's Emergency Motion for Transfer of Venue Pursuant to Fed. R. Crim. P. 21(a) and 21(b) [Doc. 137] is **DENIED**;

(4)     The Emergency Motion to Reconsider Minute Order, Recuse Biased Judiciary, Secure Immediate Medical Relief, and Dismiss Indictment [Doc. 142] is **DENIED**;

(5)     The Emergency Motion for Expedited Discovery, Comprehensive Findings, Judicial Referral, and Dismissal for Systemic Misconduct [Doc. 145] is **DENIED**;

(6)     The Emergency Omnibus Motion to Halt Judicial Bias, Transfer Venue, and Restore Justice [Doc. 146] is **DENIED**;

(7)     The Affidavit for Mandatory Recusal Under 28 U.S.C. § 144 Due to Judicial Bias, Obstruction, and Systemic Prejudice [Doc. 147] is **DENIED**;

(8)   The Judicial Misconduct Complaint and Motion for Recusal of Judge Nina Y. Wang [Doc. 148], to the extent it could be construed as a motion for recusal, is **DENIED**;

(9)   The Motion for Urgent Relief to Enforce Supervisory Review, Sanction Clerk Obstruction, and Secure Venue or Dismissal Findings [Doc. 155] is **DENIED**;

(10)  The Affidavit Seeking Recusal Under 28 U.S.C. §§ 144, 455, Transfer Under Fed. R. Crim. P. 21(a), and Dismissal for BRA Violations [Doc. 160] is **DENIED in part** and **REFERRED** to the Honorable Scott T. Varholak in part, but only to the limited extent it seeks Judge Varholak's recusal in this case under 28 U.S.C. § 455;

(11)  The Motion for Immediate Appointment of a Special Master and Emergency Stay of Proceedings [Doc. 164] is **DENIED**;

(12)  The Motion to Dismiss for Structural Error [Doc. 183] is **DENIED**;

(13)  The Motion for Appointment of Counsel and to Compel Rulings on All Pro Se Motions [Doc. 186] is **DENIED**;

(14)  The Motion to Amend Motion to Appoint Counsel [Doc. 194] is **GRANTED in part** and **DENIED in part**; and

(15)    A copy of this Order shall be marked as legal mail and sent to:

Rico Tomas Garcia, #49628-511
Englewood Federal Correctional Institution
Inmate Mail/Parcels
9595 West Quincy Avenue
Littleton, CO 80123

DATED:  July 18, 2025                              BY THE COURT:

Nina Y. Wang
United States District Judge