IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Criminal Action No. 24-cr-00106-NYW-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    RICO TOMAS GARCIA,

    Defendant.

## ORDER DENYING MOTION TO SUPPRESS

Defendant Rico Tomas Garcia ("Defendant" or "Mr. Garcia") is charged with nine counts of wire fraud in violation of 18 U.S.C. § 1343 and six counts of money laundering and aiding and abetting the same in violation of 18 U.S.C. §§ 1957(a) and 2. He moves to suppress evidence obtained, via search warrant, from seven email accounts. *See* [Doc. 237 (the "Motion" or "Motion to Suppress")]. The Government opposes the Motion, [Doc. 238], and Mr. Garcia has filed a reply, [Doc. 241]. For the reasons set forth below, the Motion to Suppress is respectfully **DENIED**.

### BACKGROUND

The Government alleges that, in the early months of the COVID-19 pandemic, Defendant devised and participated in a scheme to defraud by misrepresenting that he would procure millions of bottles of hand sanitizer in exchange for approximately $2.5 million. [Doc. 1 at ¶ 5]. According to the Government, instead of delivering the hand sanitizer as agreed, Defendant "stole the money for personal use, and then subsequently falsified bank records to conceal how" he spent the funds. [*Id.* at ¶¶ 5, 11].

On May 25, 2023, former United States Magistrate Judge Kristen L. Mix signed a search warrant authorizing the search of electronic information for evidence of wire fraud. *See* [Doc. 237-1]. The search warrant's attachments describe the items to be searched for or seized. Attachment A states that the "warrant applies to information associated with" seven email accounts: orders@botani-labs.com, rico.garcia@botani-labs.com, arbitration@botani-labs.com, sr.ricogarcia@gmail.com, hamsaholdings@gmail.com, granadaholdings18@gmail.com, and mangrana.group@gmail.com. [*Id.* at 21]. Elsewhere, the warrant describes how these email accounts were allegedly used in the charged crimes. *See* [*id.* at ¶¶ 17–18, 23–27, 32, 37, 40–43, 47, 49]. Attachment B describes "Particular Things to be Seized." [*Id.* at 22]. Specifically, Attachment B.I describes "Information to be disclosed by Google LLC" and states that "[t]o the extent that the information described in Attachment A" (i.e., the information associated with the email accounts) "is within the possession, custody, or control of Google, . . . Google is required to disclose to the government," for each email account, "the following information from March 15, 2020 to the present":

    a.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

        1.    Names (including subscriber names, user names, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

        3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP")

> addresses) associated with those sessions, including log-in IP addresses;
>
> 5. Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers[;]
>
> 6. Length of service (including start date and creation IP) and types of service utilized;
>
> 7. Means and source of payment (including any credit card or bank account number); and
>
> 8. Change history.
>
> b. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;
>
> c. Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs[.]

[*Id.* at 22–23]. Attachment B.II describes "Information to be seized by the government" and states:

> All information described above in [Attachment B.I] that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. § 1343, those violations involving Rico Tomas Garcia or Botani Labs and occurring after **March 15, 2020**, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:
>
> a. Any business dealings involving: IPF Sourcing, Hamsa Holdings, LLC, Granada Holdings, LLC or VYF Holdings, LLC;
>
> b. Any business dealings relating to hand sanitizer or similar products;
>
> c. Any arbitration matters relating to IPF Sourcing, excluding attorney-client privileged materials;

3

  d. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

  e. Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

  f. The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

  g. The identity of the person(s) who communicated with the Account about matters relating to Botani Labs, including records that help reveal their whereabouts.

[*Id.* at 24].

Mr. Garcia moves to suppress all evidence obtained through this search warrant, arguing that the warrant lacks the level of particularity required by the Fourth Amendment. [Doc. 237].

## LEGAL STANDARD

The Fourth Amendment "protects the people from unreasonable searches and seizures of 'their persons, houses, papers, and effects.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 62 (1992) (quoting U.S. Const. amend. IV). "For a search . . . to be reasonable, it must ordinarily be supported by a warrant based on probable cause." *United States v. Chavez*, 985 F.3d 1234, 1240 (10th Cir. 2021).

A search warrant "must particularly describe the things to be seized, as well as the place to be searched." *Dalia v. United States*, 441 U.S. 238, 255 (1979) (quotation omitted). This particularity requirement "ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985). To satisfy Fourth Amendment requirements, a warrant must "describe the items to be seized with

4

as much specificity as the government's knowledge and circumstances allow." *United States v. Sells*, 463 F.3d 1148, 1154 (10th Cir. 2006) (quotation omitted). The test used to determine whether a warrant is sufficiently particular "is a practical one." *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988). A warrant meets the particularity requirement if its description "enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Pulliam*, 748 F.3d 967, 972 (10th Cir. 2014). But a warrant lacks particularity if it "vest[s] the executing officers with unbridled discretion to conduct an exploratory rummaging through the defendant's property in search of criminal evidence." *United States v. Cotto*, 995 F.3d 786, 798 (10th Cir. 2021) (cleaned up).

## ANALYSIS

Mr. Garcia argues that the search warrant "lacks particularity as to the search of information and data from the enumerated Google Accounts." [Doc. 237 at 9]. He specifically challenges the fact that the warrant "did not limit the disclosure of evidence [by Google to the Government] to areas of the Google Account(s) that would produce evidence of wire fraud based on the information the Government possessed," and instead "requested disclosure of all areas of the Google Accounts." [*Id.*]. In his view, by permitting the Government to search "every piece of information or data in each Google Account," the warrant "fail[s] to meet the requirement of particularity." [*Id.* at 10].

The Government's response is two-fold. First, it argues that the warrant complied with the requirements of Federal Rule of Criminal Procedure 41, which sets out a two-step procedure for searching electronic data. [Doc. 238 at 2]; *see also* Fed. R. Crim. P. 41(e)(2)(B). Then, the Government argues that because Attachment B.II contains limiting

5

principles describing the specific the items that the Government may seize, the search warrant was sufficiently particular. [Doc. 238 at 3–5]. And alternatively, it argues that even if the warrant lacked particularity, the good-faith exception applies and the evidence need not be excluded. [*Id.* at 5–7].

The Court respectfully agrees with the Government and concludes that the search warrant complies with the Fourth Amendment's particularity requirements. Because the warrant authorizes the search of electronic information, Rule 41(e)(2)(B) applies. Under Rule 41(e)(2)(b), a warrant "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information," and "[u]nless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant." Fed. R. Crim. P. 41(e)(2)(B). "Because electronic devices 'commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location,'" Rule 41 "'acknowledges the need for a two-step process: officers may seize or copy the *entire storage medium* and review it later to determine what electronically stored information falls within the scope of the warrant.'" *United States v. Jama* (*Jama II*), No. 22-cr-00225-NEB-DTS, 2025 WL 227296, at *2 (D. Minn. Jan. 17, 2025) (emphasis added) (quoting Fed. R. Crim. P. 41 advisory committee's note to 2009 amendments).

Defendant asserts that Rule 41 does not displace the Fourth Amendment's particularity requirement and compliance with Rule 41 does not equate to compliance with the Fourth Amendment. [Doc. 241 at 1–2]. While Mr. Garcia is technically correct that Rule 41 and the Fourth Amendment are not coextensive, *see* Fed. R. Crim. P. 41 advisory committee's note to 2009 amendments (explaining that Rule 41 "does not

6

address the specificity of description that the Fourth Amendment may require in a warrant for electronically stored information"), Rule 41 provides important context for the Court's determination of whether the warrant's contents satisfy the Fourth Amendment.

Turning to Attachment B.I, Defendant insists that it lacks particularity because it authorizes Google's broad disclosure of information associated with the seven subject email accounts. [Doc. 237 at 10]. This argument ignores the remainder of the warrant and the weight of authority across the country. Courts have consistently recognized that a warrant requiring the *disclosure* of a large set of records (for instance, a wide range of information associated with an email account, like in Attachment B.I), but limiting the information subject to *seizure* during a later review (like in Attachment B.II), is constitutionally permissible. See, e.g., United States v. Karkalas, No. 13-cr-00273-SRN-JJK, 2016 WL 2710879, at *4 (D. Minn. Feb. 1, 2016) ("[N]umerous courts have found that the two-step process set forth in Criminal Rule 41 does not violate the Fourth Amendment." (collecting cases)), *report and recommendation adopted*, 2016 WL 2342116 (D. Minn. May 3, 2016); United States v. Lee, No. 1:14-cr-00227-TCB-2, 2015 WL 5667102, at *3 (N.D. Ga. Sept. 25, 2015) ("[T]he weight of the authority supports the conclusion that a warrant that requires disclosure of the entire contents of an email account and then describes a subset of that information that will be subject to seizure is reasonable."); *see also Jama II*, 2025 WL 227296, at *2–3; United States v. Manavalan, No. 2:23-cr-00192-LK, 2026 WL 21420, at *4 (W.D. Wash. Jan. 5, 2026). Indeed, "courts have long recognized the practical need for law enforcement to exercise dominion over documents not within the scope of the warrant in order to determine whether they fall within the warrant." *In re Warrant for All Content & Other Info. Associated with the Email*

*Acct. xxxxxxx@gmail.com Maintained at Premises Controlled By Google, Inc.*, 33 F. Supp. 3d 386, 392 (S.D.N.Y. 2014); *cf. Andresen v. Maryland*, 427 U.S. 463, 482 n. 11 (1976) ("In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.").

Of course, this does not mean that the Government has unfettered discretion to broadly seize and search electronic information without restraint. For example, "[s]everal courts have required the Government to specify a date range" for information subject to disclosure. *United States v. Jama* (*Jama I*), No. 22-cr-00225-NEB-DTS, 2024 WL 5381447, at *5 (D. Minn. Nov. 21, 2024) (collecting cases), *report and recommendation adopted*, 2025 WL 227296. Here, Attachment B.I does provide a limiting date range, *see* [Doc. 237-1 at 22 (requiring disclosure of information "from March 15, 2020 to the present," i.e., May 25, 2023)], and Defendant does not challenge the reasonableness of this timeframe, *see* [Doc. 237]. And the Government is similarly limited by the remainder of the search warrant and Attachment B.II, which describes the specific data that may be seized. *See* [Doc. 237-1 at 24]; *see also In re Search of Info. Associated with [redacted]@mac.com that is Stored at Premises Controlled by Apple, Inc.*, 13 F. Supp. 3d 157, 164 (D.D.C. 2014) ("[L]aw enforcement discretion is constrained and limited to the items to be seized that are specified in Attachment B to the warrant."); *Jama II*, 2025 WL 227296, at *2 ("[That] Attachment B requires Google or Microsoft to disclose the entire contents of email accounts (that were specifically identified in Attachment A) does not mean that law enforcement can search for anything in that disclosure"). Defendant does not argue that the categories of evidence to be seized, as outlined in Attachment B.II, are

8

insufficiently particular.  *See* [Doc. 237].  And finally, the warrant identifies seven specific email addresses allegedly used by Mr. Garcia to communicate about actions that form the basis of the Indictment.  *See* [Doc. 237-1].  Mr. Garcia does not argue that the search violated the Fourth Amendment by capturing inappropriate email accounts.  *See generally* [Doc. 237].

These limiting principles render Defendant's reliance on *United States v. Otero*, 563 F.3d 1127 (10th Cir. 2009), unpersuasive.  Defendant insists that the categories of items to be disclosed in Attachment B.I "are in line with wide-ranging search requests previously found to be invalid," citing *Otero* in support.  [Doc. 237 at 10 (quotation omitted)].  But *Otero* is distinguishable.  In that case, a defendant challenged the constitutionality of a search warrant that permitted the seizure of, inter alia, "[a]ny and all information and/or data stored" on her computer.  *Otero*, 563 F.3d at 1130.  Because the warrant "ha[d] no limiting instruction whatsoever" and impermissibly "authorize[d] a wide-ranging search of" the defendant's computer, the Tenth Circuit found the warrant invalid for lack of particularity.  *Id.* at 1132–33.  Unlike *Otero*, the warrant at issue here *does* have limiting principles.  It limits the required disclosure of information to seven email accounts. [Doc. 237-1 at 21–22].  It contains a temporal limitation.  [*Id.* at 22].  And unlike *Otero*, it limits the items that the Government may seize to specific categories of information.  [*Id.* at 24]; *see also Jama II*, 2025 WL 227296, at *3 (finding similar search warrant sufficiently particular); *Lee*, 2015 WL 5667102, at *9 (warrant that permitted disclosure of "entire contents of [email] accounts" but "limited the items authorized to be seized by the government to evidence reasonably connected to the crime" was constitutional).

9

Defendant nevertheless asserts that the search warrant should have limited the items subject to disclosure with more particularity, suggesting that the Government could have, and should have, "limit[ed] disclosure . . . to emails between certain accounts or emails that contain certain 'buzzwords' or limiting the disclosure of internet search history to certain 'buzzwords.'" [Doc. 237 at 11]. He also suggests that the Government could have "sen[t] a request [to Google] with the specific data sought" and Google could have, in turn, responded "with precisely that data." [Doc. 241 at 2 (quotation omitted)]. The Court respectfully disagrees with these arguments. "[N]othing in the Fourth Amendment requires law enforcement to cede to non-law enforcement their power to search and determine which matters are subject to seizure." *United States v. Deppish*, 994 F. Supp. 2d 1211, 1220 (D. Kan. 2014). "[T]here are serious practical problems with requiring private parties to 'search through e-mails and electronic records related to the target account and determine which e-mails are responsive to the search warrant.'" *Jama I*, 2024 WL 5381447, at *4 (quoting *In re Search of Info. Associated with [redacted]@mac.com*, 13 F. Supp. 3d at 165). It would be "unworkable and impractical" to require service-provider employees, presumably untrained in criminal investigations, to determine whether certain documents or data contained in the email accounts constitute fruits, contraband, evidence, or instrumentalities of wire fraud. *See In re Search of Info. Associated with [redacted]@mac.com*, 13 F. Supp. 3d at 165; *see also In re Warrant for All Content & Other Info. Associated with the Email Acct. xxxxxxx@gmail.com*, 33 F. Supp. 3d at 395 ("Google employees would not be able to interpret the significance of particular emails without having been trained in the substance of the investigation.").

"[S]o long as a warrant specifies with particularity what evidence the government intends to seize, establishes probable cause that the evidence is connected to a specific criminal statute, and includes some limitations (such as a date range) to prevent the potential of a general search, the warrant meets the Fourth Amendment particularity requirement." *In re Search of Info. Associated with Email Addresses Stored at Premises Controlled by the Microsoft Corp.*, 212 F. Supp. 3d 1023, 1036–37 (D. Kan. 2016). Here, the warrant follows the familiar two-step process recognized in Rule 41(e)(2)(B) and contains sufficient limiting principles to meet Fourth Amendment particularity standards.

Finally, even if the warrant did lack particularly (which the Court does not hold), the Court would find that the good-faith exception to the exclusionary rule applies. "When officers rely on a warrant, [courts] presume they acted in objective good faith." *United States v. Edwards*, 813 F.3d 953, 970 (10th Cir. 2015). "[T]he good-faith exception provides that evidence seized under a defective warrant should not be suppressed if executing officers had reasonably relied on the warrant's validity." *United States v. Dunn*, 719 F. App'x 746, 752 (10th Cir. 2017) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984); further citation omitted). "But the good-faith exception does not apply when the warrant is so lacking in particularity that the executing officers cannot reasonably presume the warrant to be valid." *Id.* "In the ordinary case," however, "an officer cannot be expected to question the [magistrate judge's] . . . judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921.

Defendant contends that the warrant was so lacking in particularity that officers could not have reasonably presumed the warrant was valid, [Doc. 241 at 6–7], but the Court disagrees. Numerous courts have found warrants just like the one issued here

11

constitutionally valid; therefore, the warrant was "not so facially deficient that officers could not reasonably presume [its] validity." *Cf. Jama II*, 2025 WL 227296, at *4 (explaining that good-faith exception applies "when court decisions conflict on a legal issue"). Because numerous federal judges have reasonably concluded that similar warrants are constitutionally sufficient, the executing officers here could reasonably presume that the warrant was valid.

For the foregoing reasons, the Motion to Suppress is respectfully **DENIED**.

## CONCLUSION

For the reasons set forth above, it is **ORDERED** that:

(1)  Defendant's Motion to Suppress Google Account Information and Emails Unlawfully Obtained by a Warrant Lacking Particularity [Doc. 237] is **DENIED**.

DATED:  January 16, 2026

BY THE COURT:

_____
Nina Y. Wang
United States District Judge