**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Criminal Action No. 24-cr-00106-NYW-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    RICO TOMAS GARCIA,

    Defendant.

## ORDER

This matter is before the Court on the Motion for Order for Subpoena Duces Tecum Pursuant to Crim. P. Rule 17(c) (the "Motion") filed on January 28, 2026 by Defendant Rico Tomas Garcia ("Defendant" or "Mr. Garcia"). [Doc. 245]. The Government has filed a Response. [Doc. 258]. For the reasons set forth below, the Motion is respectfully **DENIED**.

Rule 17 of the Federal Rules of Criminal Procedure provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates" and states that the Court "may direct the witness to produce the designated items in court before trial." Fed. R. Crim. P. 17(c)(1). Rule 17(c) is "not intended to provide an additional means of discovery," but "to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). A party seeking a subpoena duces tecum under Rule 17(c) must establish:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699–700 (1974). "Courts interpreting *Nixon* have distilled the inquiry into three elements: (i) relevance, (ii) admissibility, and (iii) specificity." *United States v. Love*, No. 09-cr-00526-MSK, 2010 WL 1931021, at *1 (D. Colo. May 13, 2010) (citing *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002)). "The party requesting the subpoena must satisfy each of these requirements." *United States v. Penn*, No. 20-cr-00152-PAB, 2022 WL 408245, at *1 (D. Colo. Feb. 10, 2022).

Mr. Garcia is charged with nine counts of wire fraud and six counts of money laundering based on allegations that he misrepresented that he would procure millions of bottles of hand sanitizer for third-party IPF Sourcing in exchange for approximately $2.5 million, an amount which was to be funded by SZY Holdings, LLC. [Doc. 1 at ¶¶ 5, 11]. The Government alleges that SZY Holdings wired approximately $2.5 million to Mr. Garcia's company, Botani-Labs, and that Mr. Garcia transferred that money to personal accounts and used the funds for personal expenses. [*Id.* at ¶¶ 8, 11]. The hand sanitizer was allegedly never delivered to IPF Sourcing. [*Id.* at ¶¶ 10, 12–13].

Mr. Garcia now moves for issuance of a subpoena duces tecum under Rule 17(c) requiring the production of bank records associated with IPF Sourcing's Wells Fargo bank account from April 2020 to December 2020. [Doc. 245 at 1]. As he explains, his "theory of the case is that throughout the roughly three months between entering the deal and

entering arbitration,[1] Mr. Garcia was attempting to perform his end of the contract but had his progress thwarted by both externalities related to COVID and issues in coming to agreements with the other parties." [*Id.* at 7 (footnote added)]. He states that "[o]ne of these issues" preventing delivery of the hand sanitizer is that he never received a contractually required second payment for his services, which he claims was distributed to IPF Sourcing but never remitted to Mr. Garcia. [*Id.*]. He argues that the bank records are relevant to his defense—specifically, his mental state—because they will demonstrate "if [the] second payment was still controlled by IPF," which will "clarif[y] why Mr. Garcia did not provide IPF with the hand sanitizer." [*Id.*]. He concludes:

> If IPF moved the payment after it received it, such that it could not be paid in full to Mr. Garcia per the requirements of the contract, Mr. Garcia's subsequent nonperformance is further rationalized as an inability to perform, as opposed to a fraudulent scheme of planned nonperformance. If IPF did not move the payment but merely refused to tender it to Mr. Garcia, this too has a bearing on Mr. Garcia's ability to perform, as IPF would be withholding the funds guaranteed to Mr. Garcia, which, again, further establishes that Mr. Garcia did not act with the requisite fraudulent intent from the outset but was instead prevented from performing by the course of actions of IPF.

[*Id.* at 7–8].

In its Response, the Government challenges, inter alia, the relevance of the requested documents. [Doc. 258 at 5]. It argues that because "the defendant admits he has no idea what happened to" the expected second payment, "there is no possibility that the use or nonuse of these funds could have any effect on the defendant's mental state at the time of the offenses approximately six years ago." [*Id.* at 6].

---

[1] As referenced in the Indictment and as mentioned in several filings in this case, Botani-Labs and IPF Sourcing engaged in arbitration proceedings beginning in the summer of 2020 related to the underlying allegations. *See* [Doc. 1 at ¶ 14; Doc. 45 at 2–3; Doc. 245 at 3].

The Court respectfully agrees with the Government. "*Mens rea* is 'the mental element of the crime charged'" and "relate[s] to a defendant's mental condition at the time of the offense." *United States v. Herriman*, 739 F.3d 1250, 1258 (10th Cir. 2014) (quoting *Clark v. Arizona*, 548 U.S. 735, 742 (2006)). Defendant does not adequately explain how the Wells Fargo bank records have any relevance to his defense or the Government's ability to prove his culpable mental state. *See* [Doc. 245]. He asserts that "[k]nowing where [the second] payment was transferred is crucial to understanding why the second payment was not provided to Mr. Garcia," [*id.* at 7], but he does not explain why *IPF Sourcing's* reason(s) for not transferring the second payment has any bearing on *Defendant's* mental state at the time of the charged offenses. Indeed, Defendant asserts that it is still "unknown" whether IPF Sourcing spent the second payment or maintained it in the Wells Fargo account. [*Id.*]. Therefore, the location of the second payment or IPF Sourcing's ability to transfer it to Mr. Garcia would not prove or disprove Mr. Garcia's mental state at the time of the alleged offenses and is thus not relevant to this case. *See* Fed. R. Evid. 401 (evidence is relevant if it has "any tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence"). Whether IPF Sourcing maintained the funds in its account or not, Mr. Garcia may still assert a defense that "his progress [in providing the hand sanitizer was] thwarted by both externalities related to COVID and issues in coming to agreements with the other parties." [Doc. 245 at 7].

Because Mr. Garcia has not demonstrated the relevance of the requested records, he has not satisfied the requirements of *Nixon* and has not demonstrated that a subpoena

duces tecum should issue.  *Penn*, 2022 WL 408245, at *1.  Accordingly, Defendant's Motion is respectfully **DENIED**.

## CONCLUSION

For the reasons set forth above, it is **ORDERED** that:

(1)  The Motion for Order for Subpoena Duces Tecum Pursuant to Crim. P. Rule 17(c)  [Doc. 245] is **DENIED**.

DATED:  February 6, 2026

BY THE COURT:

_____
Nina Y. Wang
United States District Judge