**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Criminal Action No. 24-cr-00106-NYW-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    RICO TOMAS GARCIA,

      Defendant.

---

### ORDER ON MOTION TO EXCLUDE

This matter is before the Court on the Government's Motion to Exclude Expert Testimony (the "Motion" or "Motion to Exclude"). [Doc. 267]. Defendant Rico Tomas Garcia ("Defendant" or "Mr. Garcia") opposes the Motion. [Doc. 272]. For the following reasons, the Motion to Exclude is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

Mr. Garcia is charged with nine counts of wire fraud in violation of 18 U.S.C. § 1343 and six counts of money laundering, and aiding and abetting the same, in violation of 18 U.S.C. §§ 1957(a) and 2 [Doc. 1]. The Court assumes the Parties' familiarity with the allegations underlying the charges and does not repeat them here.

Mr. Garcia is set for an eight-day jury trial beginning March 2, 2026. [Doc. 232 at 5]. He intends to call Rosemary Coates ("Ms. Coates"), "a global supply chain management expert and consultant," as an expert witness at trial. [Doc. 267-1 at 3]. On

February 16, 2026, the Government moved to exclude Ms. Coates's testimony.  *See* [Doc. 267 at 1, 15].  Defendant responded in opposition on February 20, 2025.  [Doc. 272].

### LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "In essence, Rule 702 permits a court to admit expert testimony that is 'both reliable and relevant.'"  *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)).  The party proffering expert testimony has the burden to show its admissibility by a preponderance of the evidence.  *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).

Trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony is reliable and relevant.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993).  To fulfill that function, the court first analyzes whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render their opinions. Fed. R. Evid. 702; *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019).  If the expert is qualified, the court must determine whether the expert's opinions

are reliable by evaluating the underlying reasoning and methodology.  *Bill Barrett Corp.*, 918 F.3d at 770.  The court must also decide whether the expert's opinions are "applicable to a particular set of facts," i.e., are relevant to the case at hand.  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  "Relevant expert testimony must logically advance a material aspect of the case, . . . and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (cleaned up).  The relevance inquiry "encompasses Rule 702's requirement that the evidence help the trier of fact to understand the evidence or to determine a fact in issue."  *Sanderson*, 976 F.3d at 1172 (cleaned up).

Even if an expert witness's testimony is reliable and relevant, the testimony may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Evidence need not be "probatively essential" to survive a Rule 403 challenge.  *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011).  "To the contrary, [the] law favors admission of all relevant evidence not otherwise proscribed; thus, exclusion under this rule is 'an extraordinary remedy [that] should be used sparingly.'"  *Id.* (emphasis omitted) (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999)).  "The district court has considerable discretion in performing the Rule 403 balancing test."  *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (quotation omitted).

## ANALYSIS

### I.    Timeliness

The deadline for rebuttal expert witness disclosures[1] was December 12, 2025, and the deadline for filing motions challenging rebuttal experts was December 19, 2025. *See* [Doc. 122; Doc. 232 at 5].  The Government's Motion to Exclude was filed on February 16, 2026, nearly two months after the deadline to file such motions. *See* [Doc. 267].  The Motion to Exclude does not seek leave to file out of time or address timeliness at all. *See* [*id.*].  The Motion to Exclude also represents that Mr. Garcia disclosed Ms. Coates as an expert on February 9, 2026, several weeks after the deadline for affirmative expert disclosures.  *See* [*id.* at 1].  The Court therefore ordered Defendant to address the untimeliness of his disclosure in his response to the Motion to Exclude. *See* [Doc. 268].

Mr. Garcia acknowledges that his rebuttal expert disclosure was untimely.  [Doc. 272 at 12].  He argues that exclusion of Ms. Coates on untimeliness grounds is not appropriate due to the timing of the Government's affirmative expert disclosure, the timing of counsel's entry onto the case, and because the Government has not been prejudiced by the belated disclosure.  [*Id.*].  Defendant notes that "[t]he government's expert disclosures to the defense were similarly late and were provided to the defense on January 16, 2026" and requests that "[i]f the Court strikes the defense's expert as untimely, . . . the Court also strike all of the government's expert witnesses as untimely as well."  [*Id.* at 15].

When contemplating discovery sanctions in a criminal case, courts consider "(1) the reason for the delay in disclosing the witness; (2) whether the delay prejudiced

---

[1] Defendant classifies Ms. Coates as a rebuttal expert.  *See* [Doc. 272 at 12].

the other party; and (3) the feasibility of curing any prejudice with a continuance." *United States v. Adams*, 271 F.3d 1236, 1243–44 (10th Cir. 2001). "The preferred sanction is a continuance," and it "would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." *United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002).

The Court is not persuaded that counsel's entry into the case on September 4, 2025, [Doc. 228], months before the expert disclosure deadlines, provides an adequate explanation for Defendant's failure to comply with the expert disclosure deadlines. No matter when counsel enters an appearance in the case, counsel is expected to come up to speed with the case and comply with the Court's existing orders; and in this case in particular, the order setting the expert disclosure and Rule 702 motions deadlines was plain on the Court's docket, *see* [Doc. 122], and referenced in a written order entered after counsel's appearance, *see* [Doc. 232 at 5]. But the Court is also mindful that the Government's expert disclosures were also late,[2] such that defense counsel could not have complied with the rebuttal expert deadline set by the Court. And given that the Government fails to address the timeliness of its Motion or expert disclosures at all, *see* [Doc. 267], and was late in its own disclosures, the Court can only assume that the

---

[2] Defense counsel represents that Government counsel communicated that "[i]t is unclear what our current expert disclosure date is, but previous orders were 21 days before trial so I imagine the same applies to our current trial date." [Doc. 272 at 14]. If either Party was uncertain about the expert disclosure and/or Rule 702 motions deadlines, the Parties should have filed a motion for clarification.

Government has not been prejudiced by Defendant's belated disclosure.  The Court declines to exclude Ms. Coates's testimony on untimeliness grounds.[3]

## II.    The Motion to Exclude

The Government moves to exclude Ms. Coates's testimony in its entirety, arguing that (1) she is not qualified to offer many of her opinions; (2) her methodology in forming her opinions is not reliable; (3) her opinions are not helpful to the jury; and (4) many of her opinions constitute impermissible legal conclusions couched as expert opinions. [Doc. 267 at 4].  The Government has provided a chart that sets out each opinion it challenges and its objections to each opinion.  *See* [Doc. 267-2].  The Court has sua sponte categorized Ms. Coates's opinions into four separate categories:

- Statements of fact that are not opinions;

- Statements or opinions that parrot out-of-court statements;

- Opinions or statements concerning the COVID-19 pandemic and its effects; and

- Opinions about the reasonableness of Mr. Garcia's actions or Mr. Garcia's intent.

The Court addresses each category in turn.

### A.    Statements of Fact, Not Opinions

Many of the "opinions" challenged by the Government are more appropriately categorized as statements of fact:

- The now-defunct Botani-Labs purchased and sold raw botanical materials and other plant-derived products, including cannabis products.  In 2020, Botani-Labs supplied wholesale herbal supplements, vegan products, and botanical extractions to the consumer market.  [Doc. 267-1 at ¶ 17].

---

[3] Neither Party has requested a continuance.  Because the trial is set to begin in less than one week, and given the ends-of-justice continuances granted in this case already, the Court finds that a continuance of the trial would not be in the interest of justice.

- Mr. Garcia had a prior relationship with IPF Sourcing, and . . . Garcia was asked to supply 1.33 million 16-oz bottles of hand sanitizer to IPF.  The need was urgent.  [*Id.* at ¶ 18 (footnote omitted)].[4]

- International Product Fulfillment (IPF Sourcing) is a full-service sourcing company that helps its customers source PPE, safety workwear, and protective equipment worldwide.  Sourcing Agents, such as IPF, act as outsourced purchasing departments for organizations that do not have in-house capabilities or global reach.  [*Id.* at ¶ 19 (footnote omitted)].

- In April 2020, following the onset of the COVID-19 pandemic, IPF Sourcing was tasked with sourcing 9 million 16-ounce bottles of hand sanitizer in exchange for approximately $37.8 million.  IPF Sourcing agreed to deliver tranches of hand sanitizer to its customer[s], starting May 4, 2020, and ending June 8, 2020.  IPF Sourcing secured funding for the deal from SZY.  [*Id.* at ¶ 20].

- IPF Sourcing subsequently engaged Rico Garcia to assist with locating production capacity for some of the 9 million bottles of hand sanitizer.  It appears that IPF Sourcing placed several contracts for hand sanitizer, including the one with Mr. Garcia for 1.33 million bottles.  [*Id.* at ¶ 21].

- Payments made to suppliers and sourcing agents like Mr. Garcia, for very large purchases, are typically paid in two segments – half at the placement of the order and half on delivery and acceptance of the goods.  This was generally the case with the agreement between Mr. Garcia and IPF Sourcing.  However, the agreement between Mr. Garcia and IPF Sourcing required the second payment "prior to" delivery of the good.  Mr. Garcia was paid the first half of the fees in advance of production.  [*Id.* at ¶ 28].

Although the Government's Motion suggests that it takes the position that these assertions are "opinions," the Court finds them more appropriately classified as statements of fact.  "Both Federal Rules of Evidence 701 and 702 distinguish between expert and lay testimony, not between expert and lay witnesses.  Indeed, it is possible for

---

[4] Ms. Coates states that "as a result" of Mr. Garcia's prior relationship with IPF Sourcing, Mr. Garcia "was asked to supply" the hand sanitizer.  [Doc. 267-1 at ¶ 18].  But unless Ms. Coates can establish a foundation and demonstrate her personal knowledge of why IPF Sourcing contracted with Mr. Garcia, she may not opine about why IPF Sourcing selected Mr. Garcia.  *See* Fed. R. Evid. 602.  As discussed in more detail below, Ms. Coates may not simply offer Mr. Garcia's out-of-court statements reframed as a factual assumption or an expert opinion.

the same witness to provide both lay and expert testimony in a single case." *United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002) (footnotes omitted). "[W]itnesses need not testify as experts simply because they are experts—the nature and object of their testimony determines whether the procedural protections of Rule 702 apply." *Id.*

When an expert witness testifies as a fact or lay witness, the admissibility of the witness's testimony "is not determined by Rule 702," *Cox v. Wilson*, No. 15-cv-00128-WJM-NYW, 2016 WL 11260309, at *2 (D. Colo. Oct. 20, 2016); *Cavitat Med. Techs., Inc. v. Aetna, Inc.*, No. 04-cv-01849-MSK-MEH, 2006 WL 6219350, at *1 (D. Colo. Apr. 13, 2006) ("The admissibility of assumptions and factual testimony are not determined by Fed. R. Evid. 702."), and the testimony is not properly challenged through a Rule 702 motion. As such, the Court declines to outright preclude Ms. Coates from making the above statements of fact in her testimony, as these statements *may* provide necessary context to the actual opinions she intends to offer, so long as proper foundation is laid. *See Cox*, 2016 WL 11260309, at *3 (declining to exclude statements of factual assumption, but excluding one factual statement that "include[d] impermissible weighing of the evidence").

To the extent that Ms. Coates's factual propositions rely upon hearsay that may be appropriately confronted, such as information from IPF Sourcing's website, it appears that such statements may be admissible, subject to any other contemporaneous objections.[5] However, to the extent that Ms. Coates relies solely on hearsay statements of Mr. Garcia, she will not be permitted to restate that hearsay as discussed in detail below. And for

---

[5] Ms. Coates's report cites ipfsourcing.com in support of her statement that "International Product Fulfillment (IPF Sourcing) is a full-service sourcing company that helps its customers source PPE, safety workwear, and protective equipment worldwide." *See* [Doc. 267-1 at ¶ 19 & n.2].

many other statements listed above, it is unclear where Ms. Coates derives the factual basis for her statement, as the statements lack specific source attributions. *See, e.g.*, [Doc. 267-1 at ¶ 17]. The Court will address these additional statements outside the province of the jury before Ms. Coates testifies, and her factual testimony will also be subject to contemporaneous objections at trial, including but not limited to objections under Rule 401, Rule 402, Rule 403, and Rule 602.

However, with respect to the last listed opinion—which involves a discussion of the contract between Mr. Garcia and IPF Sourcing—the Court will not permit Ms. Coates to offer opinions interpreting the contract. *See* [Doc. 272 at 13 (Defendant indicating that Ms. Coates "will be testifying about the interpretation of the contract at issue in this case")]. Generally speaking, "contract interpretation is not a proper subject for expert testimony." *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F. Supp. 3d 1260, 1267 (D. Colo. 2022). Even if Ms. Coates had any sort of legal or specialized training regarding contract interpretation—which she does not, s*ee* [Doc. 267-1]; *see also* [Doc. 267 at 4 (the Government arguing that "it is unclear exactly what education, training, and experience Ms. Coates has with interpreting contractual terms")]—Defendant does not explain why expert testimony interpreting the contract is required in this case or would be helpful to the jury, *see* [Doc. 272]. For instance, he does not argue that the contract uses any particular term of art or other technical term that the jury could not understand without the assistance of expert testimony. *Cf. United States v. Higgins*, No. 3:18-cr-00186-TMR-MRM, 2022 WL 36511, at *7 (S.D. Ohio Jan. 4, 2022) (suggesting that it would be appropriate for an expert witness to "clarify or define terms of art, science, or trade" (quotation omitted)), *aff'd*, No. 22-3538, 2023 WL 6536752 (6th Cir. Oct. 6, 2023); *United*

*States v. Shetty*, No. 2:23-cr-00084-TL, 2024 WL 5088339, at *9 (W.D. Wash. Dec. 12, 2024) ("[B]arring testimony about specific terms of art, experts are not permitted to testify as to their own version of contractual interpretation." (collecting cases)).  And finally, opinions focused on the proper interpretation of the contract may confuse the jury and suggest that Defendant's compliance with (or breach of) the contract is at issue in this case, when it is not.  *See United States v. Fallon*, 61 F.4th 95, 108–10 (3d Cir. 2023) (in fraud case, affirming district court's exclusion of contract interpretation testimony under Rule 403).  Accordingly, while Ms. Coates may testify, based on her experience, about standard payment practices or the factual contents of the contract between Mr. Garcia and IPF Sourcing, she may not offer opinions interpreting the contract.  The Motion to Exclude is **GRANTED in part** and **DENIED in part** with respect to these statements, subject to other objections at trial.

### B.    Statements or Opinions that Parrot Out-of-Court Statements

Some of Ms. Coates's statements appear to simply parrot out-of-court statements made by Mr. Garcia about his actions or intentions.  The following opinions fall into this category:

- Rico Garcia, owner of Botani-Labs, had been investigating the manufacturing and distribution of PPE, liquid, and gel hand sanitizers before being contacted by IPF.  [Doc. 267-1 at ¶ 18 (footnote omitted)].

- [Supply-chain issues are] what Mr. Garcia experienced as he tried to tap into his own network of bottlers to source hand sanitizer.  [*Id.* at ¶ 24].[6]

- In April/May, 2020, Mr. Garcia expected to sign a contract with Riveria Bottling and traveled to their facility in Southern California to confirm production.  In the following weeks, Riveria Bottling notified Mr. Garcia of

---

[6] Only a portion of the opinion set forth in Paragraph 24 fits within this category.  The remainder of this opinion is discussed below in Section II.C.

shortages in bottles, tops, and ingredients, and their inability to supply the hand sanitizer.  [*Id.* at ¶ 25 (footnote omitted)].[7]

- After Riveria Bottling notified Mr. Garcia that they were unable to perform, Mr. Garcia tried to source the hand sanitizer from China, where most of this product had been produced in the past.  [*Id.* at ¶ 26 (footnote omitted)].[8]

- Mr. Garcia continued to try to find sources for bottled hand sanitizer throughout the spring and summer of 2020.  [*Id.* at ¶ 27].[9]

The Government argues, inter alia, that these opinions are unreliable, unhelpful, not relevant, and subject to exclusion under Rule 403.  [Doc. 267-2 at 1, 3–4].  Specifically, and relevant here, the Government argues that these opinions are impermissible "vouching" opinions that "merely . . . attempt to vouch for the truthfulness of defendant's recitation of the facts."  [Doc. 267 at 12].  It also asserts that this testimony merely "parrots" Mr. Garcia's unsworn hearsay statements, so these opinions are not based on reliable facts or data.  [*Id.* at 9–10].  Defendant responds that "Ms. Coates is using her training and experience to reach an independent judgment regarding the opinions she reaches in her testimony.  Her discussion of out-of-court statements by Mr. Garcia is only incidental to the independent judgments that Ms. Coates is proffering."  [Doc. 272 at 8].

"If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then the expert is, in effect, disclosing that out-of-court statement for its substantive truth."  *United States v. Pablo*, 696 F.3d

---

[7] The Government challenges only a portion of the opinion set out in Paragraph 25. *Compare* [Doc. 267-1 at ¶ 25], *with* [Doc. 267-2 at 3].

[8] The Government only challenges a portion of the opinion set out in Paragraph 26. *Compare* [Doc. 267-1 at ¶ 26], *with* [Doc. 267-2 at 3–4].

[9] Only a portion of the opinion set forth in Paragraph 27 falls within this category.  The remainder of this opinion is discussed below in Section II.D.

1280, 1288 (10th Cir. 2012).  In that circumstance, "the expert thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement."  *Id.*  Therefore, "[a]n expert whose testimony is 'simply a summarizing of out-of-court statements of others' is likely inadmissible."  *United States v. Correa*, No. 20-cr-00148-CMA, 2024 WL 4135732, at *12 (D. Colo. Sept. 10, 2024) (quoting *United States v. Affleck*, 776 F.2d 1451, 1457 (10th Cir. 1985)).  But experts may "recite inadmissible hearsay so long as the statements qualify as information 'of the type reasonably relied on by all experts in that particular field,' the expert relied upon that information, and 'the expert exercised "independent judgment" in assessing and using the hearsay (and other sources) to reach an expert opinion.'"  *Id.* (quoting Fed. R. Evid. 703); *see also United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (an expert may not "simply transmit . . . hearsay to the jury" but must instead "form [her] own opinions by applying [her] extensive experience and a reliable methodology to the inadmissible materials" (quotation omitted)).

Here, there is nothing in Ms. Coates's report demonstrating that she used her "training and experience" to form opinions about Mr. Garcia's efforts or expectations during the spring of 2020, as Defendant suggests.  Nor is there any indication that these opinions derived from Ms. Coates's "independent judgment" or that hearsay statements are of the type reasonably relied on by all experts in Ms. Coates's field.  *Correa*, 2024 WL 4135732, at *12.  Instead, the only source Ms. Coates cites for (two of) these opinions is a "Statement of Rico Tomas Garcia taken by Juba Law Office, Feb 6, 2026."  [Doc. 267-1 at 6 n.1; *id.* at 7 n.4]; *see also* [Doc. 267-3].  This unsworn, out-of-court statement, apparently provided the month before trial, does not provide a reliable basis for Ms. Coates's opinions.  *Cf. United States v. Rodriguez*, 651 F. App'x 44, 46 (2d Cir. 2016)

(affirming district court's decision precluding expert from testifying that he relied on the defendant's unsworn hearsay statements to form his opinions because the defendant "was an interested witness" with "a clear motive to lie").  These opinions are inadmissible under Rule 702 and Rule 801, and the Motion to Exclude is **GRANTED** with respect to these opinions.  *See United States v. Smith*, 806 F. Supp. 3d 382, 414 (S.D.N.Y. 2025) ("This backdoor means of putting [the defendant's] view of events before the jury without subjecting him to cross examination is . . . improper under Rule 801."); *United States v. Ray*, 583 F. Supp. 3d 518, 540–42 (S.D.N.Y. 2022) (excluding expert testimony that was "a regurgitation of the defense uttered through the mouth of an expert").

### C.    Statements Concerning the COVID-19 Pandemic and its Effects

Some of Ms. Coates's statements discuss general background information about the COVID-19 pandemic, as well as more specific opinions detailing certain economic consequences of the pandemic.  Five opinions fall into this category, which the Court has labeled alphabetically for ease of reference:

- *Opinion A:*  COVID-19 was a "black swan" event – defined as an unpredictable and highly unusual event that is beyond what is normally expected of a situation and has potentially severe consequences.  Black swan events are characterized by their extreme rarity and severe impact. [Doc. 267-1 at ¶ 22 (footnote omitted)].

- *Opinion B:*  Demand for PPE of all types, including hand sanitizer, was skyrocketing in the Spring of 2020, and these products were in short supply around the world.  No vaccines were available yet, and thousands of people were dying daily.  To protect ourselves from the virus, we were instructed by health care professionals to wash our hands often and use hand sanitizer to stop the spread of COVID-19.  With the extraordinary demand for hand sanitizer and other PPE, during the Spring of 2020, it wasn't long before this spike in demand significantly outstripped supply.  [*Id.* at ¶ 23].

- *Opinion C:*  In my experience during this time - roughly April–July, 2020 - worldwide factories, including in the U.S., were at capacity because of extraordinary demand.  Raw ingredients, bottles, and bottle pumps were

scarce.    Orders were delayed, and parts were difficult to procure.
Production capacity was constrained or halted by the pandemic.  Factories
all over the world were closed for several weeks.  [*Id.* at ¶ 24].

- *Opinion D:*  During the pandemic, there was an enormous opportunity for
  profit if products could be procured to meet the extreme demand.  Price
  increases on PPE and hand sanitizer skyrocketed by 300%–400%.  In my
  experience, profit margins on PPE and hand sanitizer could be as high as
  70–80% during the spring and summer of 2020, especially for products
  sourced in China.  [*Id.* at ¶ 29 (footnote omitted)].

- *Opinion E:*  No one could have predicted the unusual circumstances of this
  "black swan" event and the global supply chain issues brought on by the
  COVID-19 pandemic.   The extraordinary volumes of PPE and hand
  sanitizer demanded could not be fulfilled by existing factories that were
  already at capacity, and because of severe shortages of bottles, caps, and
  ingredients.  [*Id.* at ¶ 31].

The Government argues that these opinions should be excluded because they
(1) are not relevant; (2) would not be helpful to the jury; and (3) are excludable under Rule
403.  [Doc. 267-2 at 2–3, 5–6].  However, the Government does not appear to challenge
the reliability of these opinions expressly in its Motion; rather, it asserts that "Ms. Coates'
opinions that discuss specific facts and opinions *outside of general pandemic supply
chain issues* are not sufficiently reliable."  [Doc. 267 at 5 (emphasis added)]; *see also* [*id.*
at 5–9 (raising arguments not specifically directed at these opinions)].  As for relevance,
it argues that testimony about supply chain disruptions is not relevant because "[t]his case
is not about the inability to obtain hand sanitizer; it is about the scheme to defraud and
the material misrepresentation that were [sic] made by the defendant."  [*Id.* at 13].  It also
asserts that "most of Ms. Coates' testimony regarding the difficulties in obtaining personal
protective equipment during the pandemic is readily understood by a lay person and will
waste time."  [*Id.* at 15].

Mr. Garcia responds that these opinions are relevant because they "provide[] context to facts already in the record or go[] beyond the common knowledge of the jurors." [Doc. 272 at 9 (quotation omitted)].  He asserts that although the jurors "could reference their experience from the supply chain disruptions during COVID-19," it is "unlikely that these individuals could testify as to the root causes of the disruption, the 'downstream' implications of the disruption, and, specifically, the effect of the disruptions on supplies (especially PPE) coming from China as these experiences were not universal or common to the average individual."  [*Id.*].

With respect to Opinions A and B, the Court agrees with the Government and concludes that the opinions are neither helpful to the jury nor relevant to the specific issues in this case.  The COVID-19 pandemic was an all-consuming worldwide event experienced by every juror who will be seated in this case, and the jurors can understand the magnitude and everyday consequences of the COVID-19 pandemic "without specialized knowledge."  *Garcia*, 635 F.3d at 477.  Stated differently, jurors do not need to be told or reminded that demand for PPE or hand sanitizer surged in the spring of 2020 or that hundreds or thousands of people died each day; they all lived through it.  *See id.* at 476–77 (in deciding whether testimony will assist the trier of fact, courts should consider whether the testimony "is within the juror's common knowledge and experience" (quotation omitted)).  And Defendant does not explain why Ms. Coates's opinion describing the pandemic as a "black swan" event would assist the trier of fact or is relevant to this case.  Because the opinions do not have "any tendency to make a fact [of consequence in this action] more or less probable than it would be without" the opinions,

Fed. R. Evid. 401(a), the opinions are not relevant and would not assist the jury in deciding this case.  The Motion to Exclude is **GRANTED** as to these opinions.

The Court also agrees with the Government with respect to Opinion D, wherein Ms. Coates discusses the surge in profit margins for PPE and hand sanitizer during the pandemic.  *See* [Doc. 267-1 at ¶ 29].  Mr. Garcia does not explain why this opinion is relevant to this case, *see* [Doc. 272], and the Court cannot conclude that it is.  Moreover, whatever minimal relevance this opinion has, the Court finds that its probative value is substantially outweighed by potential confusion of the issues, as it may cause the jury to focus on matters that are immaterial to the charges in this case.  *See* Fed. R. Evid. 403. Accordingly, the Motion to Exclude is **GRANTED** with respect to this opinion.

As for Opinions C and E, the Court agrees with Defendant.  While the general experience of supply shortages is well within the common knowledge of jurors, jurors may not know specifics about the scarcity of ingredients or equipment, production capacity and delays, or the magnitude of the supply shortages.  Moreover, to the extent that the Government argues that this testimony is irrelevant because "[t]his case is not about the inability to obtain hand sanitizer," [Doc. 267 at 13], the Court agrees with the Government's description of the case but respectfully disagrees with its argument about relevance.  To prove Mr. Garcia guilty of wire fraud, the Government must prove that Mr. Garcia "acted with specific intent to defraud."  Tenth Circuit Criminal Pattern Jury Instruction § 2.57.  Global supply-chain issues could bear on Mr. Garcia's inability to procure hand sanitizer, which could bear on whether he had intent to defraud.  And finally, because this information is not within the common knowledge or experience of all jurors, and because the Court finds that the opinions could be relevant to Mr. Garcia's intent to

defraud, the Court is not persuaded by the Government's argument about wasting time.

The Motion to Exclude is therefore **DENIED** with respect to these opinions.

### D.    Opinions about Mr. Garcia's Reasonableness or Intent

Finally, Ms. Coates offers several opinions asserting that Mr. Garcia made

reasonable efforts to source hand sanitizer in the spring of 2020.  The following opinions

fit into this category:

- Based on the statement of Mr. Garcia and my own experience with sourcing products during this time, it is my opinion that Mr. Garcia was making a reasonable effort to fulfill his obligations with IPF Sourcing for the 1.33 million bottles of hand sanitizer.  [Doc. 267-1 at ¶ 27].

- In my opinion, Mr. Garcia could have considered the down payment provided by IPF for the sourcing of hand sanitizer as part of his profit, given that profit margins were extraordinary during this period.  He expected to fill the order for 1.33 million bottles of hand sanitizer, at which time he would be paid the balance owed to him by IPF Sourcing.  [*Id.* at ¶ 30].

- In my opinion, Mr. Garcia made a reasonable effort to source hand sanitizer in the U.S. and in China during 2020, and perform as expected in his agreement with IPF Sourcing.  However, the COVID-19 pandemic caused shortages of factory capacity, bottles, caps, and ingredients, and as a result, Mr. Garcia was unable to find a source to produce hand sanitizer.  This was a situation outside of Mr. Garcia's control.  [*Id.* at ¶ 32].

- In my opinion, Mr. Garcia could reasonably assume that the down payment by IPF Sourcing included his expected profit margin for sourcing and reselling of hand sanitizer, had he been able to locate a factory and materials for production.  [*Id.* at ¶ 33].

The Government argues that these opinions should be excluded because (1) Ms. Coates

is not qualified to offer them; (2) they are unreliable; (3) they are not helpful; (4) they

impermissibly opine on Mr. Garcia's state of mind, in violation of Rule 704; and (5) their

probative value is substantially outweighed by an unnamed consideration listed in Rule

403.  [Doc. 267-2 at 4–7; Doc. 267 at 3–4].  Defendant disagrees, arguing that Ms. Coates

is qualified to testify about these matters and her testimony is reliable and relevant.  [Doc.

272 at 4]. He also asserts that Rule 704 is inapplicable to these opinions and that exclusion is not warranted under Rule 403. [*Id.* at 5–6, 12].

The Court finds several bases to exclude these opinions. ***First***, at least some of these opinions rely on Mr. Garcia's unsworn, out-of-court statements concerning his efforts to procure hand sanitizer. *See* [Doc. 267-1 at ¶ 27 ("Based on the statement of Mr. Garcia . . ."); *id.* at ¶ 30 ("[Mr. Garcia] expected to fill the order for 1.33 million bottles of hand sanitizer . . . ."); *id.* at ¶ 32 ("Mr. Garcia was unable to find a source to produce hand sanitizer.")]; *see also* [Doc. 267-3 (Mr. Garcia's statement, described as a "summary of Mr. Garcia's attempts to perform his contractual duties and the obstacles he faced that frustrated his ability to perform")]. Ms. Coates's report does not demonstrate that she formed her opinions "by applying [her] . . . experience and a reliable methodology to the inadmissible materials," *Mejia*, 545 F.3d at 197 (quotation omitted), nor do her opinions reflect any "independent judgment," *Pablo*, 696 F.3d at 1288. Rather, Ms. Coates asserts Mr. Garcia's out-of-court statements for the truth of the matter asserted. These opinions are excludable under Rule 801 and Rule 702. *Smith*, 806 F. Supp. 3d at 414; *Pablo*, 696 F.3d at 1288.

***Second***, an expert relying solely or primarily on her experience in forming her opinions "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee's note to 2000 amendments). The Government argues that Ms. Coates's opinions "are unreliable because there is no reasoning or basis in her report establishing the three factors required in *Medina-Copete*."

[Doc. 267 at 6].   Defendant responds that Ms. Coates's report satisfies the *Medina-Copete* requirements because (1) she states that her opinions are based on the factual background of the case, the evidence she reviewed, and her personal experience "sourcing PPE products during the COVID-19 pandemic," (2) she "explains that the 'methods and processes' used to develop her opinions are based upon her experiences, both through personal experience and secondary research," and (3) she "explains that when reviewing relevant materials and information in this matter she analyzed their contents in the context of, not only her over forty years' worth of education and experience, but also in the context of the COVID-19 pandemic and its disruption of global supply chains (and related business operations)."   [Doc. 272 at 7].

Defendant's argument does not actually address the *Medina-Copete* factors or respond to the Government's argument.   First, Ms. Coates does not meaningfully explain how her experience "working and consulting in global supply chain management" or "sourcing PPE products during the COVID-19 pandemic" led her to form her conclusions about the "reasonableness" of Defendant's efforts in sourcing hand sanitizer or her opinion about how Mr. Garcia "could have" viewed IPF Sourcing's initial payment. Second, Ms. Coates does not, in any way, explain how her experience is a sufficient basis for her opinions.   And third, Ms. Coates does not tie her experience in any way to the facts of this case.   *See* [Doc. 267-1].   Thus, the Court cannot conclude that these opinions are sufficiently reliable.

***Third***, the Court agrees with the Government that the opinions implicate Rule 704, which provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that

constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."  Fed. R. Evid. 704.  This Rule "proscribes . . . expert opinions in a criminal case that are about a particular person ('the defendant') and a particular ultimate issue (whether the defendant has 'a mental state or condition' that is 'an element of the crime charged or of a defense')."  *Diaz v. United States*, 602 U.S. 526, 534 (2024).

Mr. Garcia argues that "[f]or Ms. Coates's report or testimony to be improper under Fed. R. Evid 704(b), she would have to testify that Mr. Garcia did not intend to defraud any of the other parties involved in the agreement.  Ms. Coates provided no such testimony."  [Doc. 272 at 5].  The Court respectfully disagrees with this position.  While "[e]xperts may testify to 'facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state,'" experts "may not give testimony that, if believed, 'necessarily dictates the final conclusion' that the defendant "possessed [or did not possess] the requisite mens rea.'"  *United States v. Becknell*, 601 F. App'x 709, 714 (10th Cir. 2015) (first quoting *United States v. Richard*, 969 F.2d 849, 855 (10th Cir.1992), and then quoting *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000)).  Ms. Coates's statements are not framed as simple facts or opinions from which the jury could infer Defendant's mental state; rather, her statements that Mr. Garcia "expected to fill the order," tried to "fulfill his obligations with IPF Sourcing for the 1.33 million bottles of hand sanitizer," and "made a reasonable effort to . . . perform as expected in his agreement with IPF Sourcing," [Doc. 267-1 at ¶¶ 27, 30, 32], necessarily dictate a conclusion that Mr. Garcia did not intend to defraud IPF Sourcing.  Indeed, if such opinions do not dictate such a conclusion, it is unclear to the Court why these opinions would be relevant to this case at all.

The jury is capable of deciding whether, based on the evidence of Mr. Garcia's actions, Mr. Garcia intended to defraud IPF Sourcing. And if "expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact." *Sanderson*, 976 F.3d at 1173 (quotation omitted).

***Fourth***, and finally, the Court finds that the probative value of this evidence is substantially outweighed by the risk of confusing the issues or misleading the jury. Fed. R. Evid. 403. Offering opinions about whether Mr. Garcia acted "reasonably"—an objective standard—runs the substantial risk of confusing the jurors about its obligation to determine whether Mr. Garcia had *subjective* intent to defraud. For all of these reasons, the Motion to Exclude is **GRANTED** with respect to these opinions.

**CONCLUSION**

Accordingly, **IT IS ORDERED** that:

(1)    The Government's Motion to Exclude Expert Testimony [Doc. 267] is **GRANTED in part** and **DENIED in part**.

DATED: February 27, 2026                    BY THE COURT:

Nina Y. Wang
United States District Judge